NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite a memorandum decision in a brief or at oral argument should review Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| ADAM M., | ) | |
| | ) | Supreme Court No. S-14569 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-09-12478 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| CHRISTINA B., | ) | AND JUDGMENT* |
| | ) | |
| Appellee. | ) | No. 1461 - June 5, 2013 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Frank A. Pfiffner, Judge.

Appearances: Adam M., pro se, Seattle, Washington, Appellant. Notice of nonparticipation filed by Wayne Anthony Ross, Ross & Miner, P.C., Anchorage, for Appellee Christina B.

Before: Fabe, Chief Justice, Carpeneti, Winfree, Stowers, and Maassen, Justices.

## 1. INTRODUCTION

Ancillary to a divorce, the superior court granted the wife's petition for a long-term domestic violence protective order, awarded the wife sole legal and primary physical custody of the couple's child, ordered the husband to pay child support, awarded the wife compensatory and punitive tort damages, and awarded the wife full

---

\* Entered under Alaska Appellate Rule 214.

costs and attorney's fees. We granted the husband's motion to accept a late-filed appeal, and he then moved to include in his appeal the superior court's denial of domestic violence protective orders he had requested in 2010. Because he had not timely appealed the denials of those domestic violence protective orders, we granted his request only to the extent that the records from the other domestic violence files are relevant in connection with this appeal.

The husband argues that the superior court: (1) lacked subject matter jurisdiction under AS 25.24.160 to adjudicate the tort claim; (2) failed to dismiss the tort claim for failure to state a claim upon which relief could be granted under AS 25.24.160; (3) failed to comply with Alaska Civil Rule 90.3 when awarding child support; (4) failed to credit gifts against his child support arrears imposed by State of Alaska, Child Support Services Division (CSSD); (5) erred and abused its discretion by finding that he voluntarily failed to appear for trial; (6) erred and abused its discretion by entering default judgment; (7) erred and abused its discretion when making its final custody determination; (8) erred and abused its discretion when denying his 2010 protective order request and later granting the wife's protective order request; and (9) incorrectly awarded the wife full costs and attorney's fees.

The 2010 domestic violence protective order petitions are not properly before us on appeal and we do not consider them. We vacate and remand the superior court's attorney's fees ruling, and also remand for a decision whether certain gifts should have been credited towards the CSSD-imposed child support arrearage. We otherwise affirm the superior court's rulings and judgment.

## II.    FACTS AND PROCEEDINGS

### A.    Overview

Adam M. and Christina B. married in January 2009 in Anchorage. They had one son, born in March 2009. In October 2009 the family moved from Alaska to

Kansas. Christina alleged that Adam physically abused her while they lived in Kansas. Following an altercation in early December 2009, Christina left Adam and went to a women's shelter. An advocate from the shelter drove Christina to a hospital, where her injuries were photographed. Adam then filed for protection-from-abuse orders against Christina, but soon promised to withdraw the request if she returned to live with him, explaining that he filed for the protection orders only because he was afraid she would take their son. Adam withdrew the request for protection orders when Christina agreed to return; she lived with Adam for a short time but subsequently returned to Alaska with their son.

Later in December 2009 Christina filed for a decree of divorce, custody of the son, child support, property adjudication, and costs and attorney's fees. In April 2010 Christina amended her complaint to add a tort claim for damages after learning Adam had knowingly infected her with genital herpes. In his answer Adam admitted: (1) knowing he had genital herpes before beginning his relationship with Christina; (2) knowing genital herpes is a contagious disease; and (3) willfully and intentionally concealing this information from her. Christina then moved for summary judgment on her tort claim. The superior court granted partial summary judgment on liability based on Adam's admissions.

Adam later filed an amended answer and a counterclaim seeking joint legal and physical custody of their son, child support, property adjudication, and damages for theft of a computer and intellectual property. In his amended answer Adam contended that Christina's tort claim was outside the subject matter jurisdiction of the court under AS 25.24.160 and that her complaint failed to state a claim upon which relief could be granted under AS 25.24.160.

The superior court entered a divorce decree in early 2011. In August 2011, the day before trial on all other issues, the superior court received Adam's notice that he

was not appearing for trial because he was out of state and did not have sufficient funds to return to Alaska. Adam failed to appear and did not seek to participate by telephone. Trial proceeded without Adam.

In August and September 2011 the superior court issued its final judgments awarding Christina sole legal and primary physical custody of their son, $202.48 monthly in child support, and a long-term domestic violence protective order against Adam. Additionally the superior court entered final judgment on Christina's tort claim, awarding her $120,000 for expected medical costs, $240,000 for general damages, and $500,000 in punitive damages. Finally, the superior court awarded Christina full costs and attorney's fees of approximately $50,000.[1]

## B. Adam's Domestic Violence Protective Order Petition

In March 2010, after returning to Alaska, Adam filed a petition for ex parte and long-term domestic violence protective orders against Christina, alleging that he had been a victim of domestic violence in Kansas and that Christina had threatened him after he returned to Anchorage. The superior court found insufficient proof that a protective order was necessary to protect Adam from domestic violence and denied the ex parte petition. Christina responded to the petition for a long-term order, arguing that she, not Adam, had been the victim of domestic violence in Kansas.

Christina asserted that she received little help from local police when Adam victimized her in Kansas. She claimed Adam broke her cell phone, pushed her into a door, scratched her, threw her possessions against the wall, kneed her in the back, stepped on her, choked her with a towel, and threatened that if Christina called the police she would lose custody of their son. Adam asserted that Christina damaged his property,

---

[1] The superior court also ruled that the disputed computer was Christina's and that Adam had waived his intellectual property claim when he failed to appear for trial. Adam does not challenge these two rulings on appeal.

pointed a knife at him threateningly, verbally abused him, trapped him (and their son) in a bathroom, kicked him, and tried to steal his mother's car. Both Adam and Christina alleged that the other grabbed for their son and committed violent acts in their son's presence.

The superior court found insufficient evidence that Adam was a victim of domestic violence and denied his request for a long-term protective order. The court explained it did not find Adam credible. Adam did not appeal the denial of his petition.

### C. Christina's Domestic Violence Protective Order Petition

In October 2010 Christina filed a petition for ex parte and long-term domestic violence protective orders against Adam, alleging that he had harassed, followed, threatened, and forced gifts on her. Christina asserted Adam had attempted to control her and had committed domestic violence in Kansas, resulting in visits to the emergency room and to a women's shelter. A magistrate granted an ex parte order, finding probable cause to believe that Adam had committed assault or reckless endangerment, stalking, and harassment.

The superior court held a hearing on Christina's petition for a long-term order. Christina testified and questioned Adam about: (1) romantic and sexual text messages he sent; (2) giving her a skimpy dress as a gift; (3) attempting to force her to take the dress by throwing it in her car; (4) preventing her from allowing anyone else to drop off or pick up their son for scheduled visitation; (5) placing a wedding ring on a chain around their son's neck when dropping him off; (6) following Christina from scheduled visitation pick-ups and drop-offs; (7) driving around Christina's parents' house; and (8) giving Christina photographs showing him mostly nude and requesting that she place them in their son's bedroom. Christina further testified she was afraid of Adam, felt he could not let go of her, and he was using their son to control her and try to get her back.

Adam denied Christina's allegations and testified as follows: (1) he refrained from sending romantic and sexual text messages after she requested he stop; (2) their son picked out the dress for Christina and it just happened to be skimpy; (3) he was mistaken about the custody order and thought Christina had to participate in visitation drop-offs and pick-ups; (4) he did not follow Christina from the visitation drop-offs; (5) he only went around Christina's parents' house to ensure the parties' son was safe; and (6) he was proud of the modeling photographs of himself.

Adam also attempted to cross-examine Christina about events in Kansas. The judge explained that Adam was not allowed to ask questions about these events because Christina had not presented any testimony on them. Adam argued with the judge, requested a continuance, and orally moved to recuse the judge. The judge initially denied the recusal request but when Adam did not stop arguing, the judge postponed the hearing until another judge could adjudicate Adam's recusal request. However the judge found sufficient evidence of domestic violence to extend Christina's ex parte protective order and limit Adam to supervised visitation with their son.

The extended ex parte protective order stayed in effect for almost a year. Adam delayed the superior court's final decision by moving for additional continuances and moving again for the judge's recusal on the date set for a hearing, causing the hearing to be vacated. The matter eventually was set to be resolved at the August 2011 trial. After Adam failed to appear at the August 2011 trial the superior court granted Christina a long-term protective order, finding that Adam was a threat to Christina's safety and had committed multiple crimes of domestic violence, including assault or reckless endangerment, harassment, stalking, and terroristic threatening.

**D.     Custody and Visitation**

Christina received interim custody of their son in January 2010. Adam moved for interim visitation and shared custody. The superior court steadily increased

Adam's visitation beginning with two supervised hours weekly and eventually granting Adam unsupervised weekends.

The superior court appointed a custody investigator. The investigator recommended that Christina receive sole legal and primary physical custody of their son, that Adam receive weekend visitation for two out of three weekends, and that Adam continue counseling. The custody investigator's assessment found: (1) both Adam and Christina had loving relationships with their son, but Christina was better capable of meeting the child's needs because Adam set bad examples through his desire to be in control, was unwilling to listen to others, and frequently overlooked the child's needs; (2) Christina had a stable home and routine while Adam suffered mood swings and did not have a stable history; (3) Adam was preoccupied with controlling his relationship with Christina rather than with their son's well-being; and (4) Adam's behavior at the domestic violence hearings showed signs of attempts to control and excessively high expectations for their son.

At the August 2011 trial the superior court found Adam had committed domestic violence against Christina and determined unsupervised visitation was unsafe for their son. The superior court found Adam "engaged in a history of perpetrating domestic violence against Christina" and the statutory presumption against custody with a parent who has committed domestic violence applied.[2]

---

[2] Specifically, the superior court found Adam: (1) committed assault in the fourth degree when he physically abused Christina in Kansas; (2) committed criminal mischief in the fifth degree when he destroyed Christina's cell phone; (3) committed harassment in the second degree when he sent Christina text messages about a past sexual encounter and a text message requesting one last 24 hours as a family "with the implication that the end result would be a murder suicide"; (4) harassed, attempted to control, and stalked Christina when attempting to force her to take gifts from him, including sending wedding rings with their son, "a slinky dress he threw into her car (continued...)

The superior court also analyzed the AS 25.24.160 best interest factors for awarding child custody. The court explained that although this analysis was unnecessary, it was undertaken "to provide a thorough and complete record." Under this analysis the superior court again determined Adam should not have physical custody or unsupervised visitation. The court referred to the custody investigator's report and Adam's behavior throughout the proceeding and explained that "the court does not believe that [Adam] can function in any kind of controlled environment, which is where he would be if he had either supervised or even unsupervised visitation."

The superior court ordered that Adam would not have any visitation until after he completed a domestic violence intervention program, underwent a psychiatric evaluation, and completed a parenting class.

### E. Child Support

In June 2010 Christina requested child support in accordance with Alaska Civil Rule 90.3, explaining that she had primary physical custody and Adam provided no support "until only recently, when he began providing gift cards." Adam opposed and submitted a child support affidavit listing his adjusted monthly income as $1,032.29. Christina argued that Adam's adjusted monthly income was $1,532.40 and his monthly payments under Rule 90.3 should be $306.48.

The superior court awarded Christina $306.48 in interim monthly child support effective July 2010. CSSD later determined that the son had been in Christina's

---

**2** (...continued)
when she refused to take it, with the implication that she has to wear it for him," photographs of himself for Christina to hang on their son's wall so she would have to look at Adam, and following Christina after exchanging their son; and (5) committed internet stalking by posting pictures on the internet showing a simulated murder of an unfaithful woman intended to send a message to Christina about Adam's desire to remain in control.

custody between January and June 2010, and notified Adam he owed $1,838.88 in arrears for those six months.

In January 2011 Adam filed an amended child support affidavit and on April 15 moved to modify the interim child support award. He requested that the court reduce his child support payments, apply the lower amount from the date of the original interim order, and apply $567.82 that he had paid between January and June 2010, in the form of gift cards and purchases for his son, against his CSSD-imposed arrearage.

Christina argued that child support could not be modified retroactively and that Adam's gift cards should not be credited against his arrearage because gifts were barred by the interim child support order and were attempts to control her. Adam responded, arguing that he had shown a material change in circumstances because his payments were 30% more than required under Rule 90.3, and that the money he spent on gift cards should be considered proof of support allowing Adam to receive credit against his CSSD-imposed arrearage for the period before the effective date of the interim child support order.

In May 2011 the superior court modified Adam's child support payment from the date of the motion to modify, decreasing the monthly payment from $306.48 to $202.48. The court did not credit the gift cards against Adam's CSSD-imposed arrearage.

After the August 2011 trial the superior court entered its final child support order and Adam's monthly payment remained $202.48.

F.     Costs And Attorney's Fees

After the August 2011 trial the superior court awarded Christina full costs and attorney's fees. The court first looked at Adam's and Christina's incomes and determined "neither party could afford to incur attorney's fees and under ordinary circumstances there would not be an award of attorney's fees." The superior court then

explained that it found Adam's behavior throughout the litigation vexatious, in bad faith, and outrageous, characterizing it as "domestic violence terrorism in a litigation context" and an intentional attempt to control and torture Christina. Describing Adam's behavior as a "mockery of the judicial system," the court admonished Adam for filing frivolous motions, filing repeat motions, refusing to listen to the court's instructions, repeatedly delaying the proceedings, attempting to use visitation to control Christina, moving for multiple unsubstantiated judicial disqualifications, and choosing to not appear at trial.

## III. DISCUSSION

### A. The Superior Court Did Not Err Or Abuse Its Discretion By Allowing Christina To Include A Tort Claim In Her Amended Complaint.

Adam argues that the superior court erred and abused its discretion by allowing Christina to amend her complaint for divorce and add her tort claim. He contends that: (1) the superior court lacked subject matter jurisdiction under AS 25.24.160 or AS 22.10.025 to adjudicate Christina's tort claim in their divorce action; (2) Christina failed to state a claim upon which relief could be granted under AS 25.24.160; and (3) the superior court abused its discretion by allowing Christina to amend her complaint to include a tort claim in a divorce action. We affirm the superior court's decision.

#### 1. Subject matter jurisdiction

Whether the superior court has subject matter jurisdiction over a claim is a question of law that we review de novo.[3] Adam argues that the superior court lacked

---

[3] *Nw. Med. Imaging, Inc. v. State, Dep't of Revenue*, 151 P.3d 434, 438 (Alaska 2006) (citing *Hydaburg Coop. Ass'n v. Hydaburg Fisheries*, 925 P.2d 246, 248 (Alaska 1996)).

subject matter jurisdiction under AS 25.24.160[4] and AS 22.10.025.[5] While Adam correctly notes that neither statute explicitly provides subject matter jurisdiction for tort claims, he fails to recognize that these statutes do not establish the boundaries of the superior court's jurisdiction.

Alaska Statute 22.10.020 provides: "The superior court is the trial court of general jurisdiction, with original jurisdiction in all civil and criminal matters . . . ." The superior court "has been traditionally regarded as having the power to hear all controversies which may be brought before it within the legal bounds of rights or remedies, except insofar as has been expressly and unequivocally *denied* by the state's constitution or statutes."[6] Neither AS 25.24.160 nor AS 22.10.025 expressly limits the superior court's subject matter jurisdiction — the statutes simply address the superior court's power to affect rights and provide remedies when adjudicating divorce actions. Adam fails to establish that the Alaska Statutes prevent the superior court from adjudicating a tort claim in a divorce action.

### 2. Claim for relief

Adam also argues that Christina's tort cause of action "failed to state a claim upon which relief can be granted under AS 25.24.160 in this case." "Because we are 'in virtually the same position as the trial court in its ability to assess the adequacy

---

[4]     AS 25.24.160 addresses remedies courts may provide in divorce actions.

[5]     AS 22.10.025 addresses powers of superior courts in divorce, separation, and child support actions.

[6]     *Siggelkow v. State*, 731 P.2d 57, 61 (Alaska 1987) (emphasis in original) (citing *In re C.D.M.*, 627 P.2d 607, 610 (Alaska 1981)).

of the pleadings,' this issue is reviewed de novo."[7]

Alaska Statute 25.24.160 establishes the types of judgment a court may provide in actions for divorce. But Christina did not request tort damages under AS 25.24.160; she asserted a common law claim that Adam intentionally infected her with a sexually transmitted disease after fraudulently obtaining her consent, and she demanded damages. The superior court properly rejected Adam's argument because Christina's complaint was not limited to AS 25.24.160. As Adam does not argue that Christina failed to state an allowable common law tort claim, we do not consider that question here.

### 3.    Abuse of discretion

Adam finally argues that the superior court abused its discretion by allowing Christina to amend her complaint and include her tort claim. "The trial court has discretion to grant or deny leave to amend, and we will interfere with the exercise of that discretion only where it has been abused."[8] "An abuse of discretion is found only where we are left with 'a definite and firm conviction, after reviewing the whole record, that the trial court erred in its ruling.' "[9] Alaska Civil Rule 15(a) provides that "a party may amend the party's pleading only by leave of the court or by written consent of the adverse party; and leave shall be freely given when justice so requires." And Alaska Civil Rule 18(a) provides that "[a] party asserting a claim to relief as an original claim . . . may

---

[7]     *Alakayak v. B.C. Packers, Ltd.*, 48 P.3d 432, 448 (Alaska 2002) (quoting *Gamble v. Northstore P'ship*, 907 P.2d 477, 482 (Alaska 1995)).

[8]     *U.S. Fire Ins. Co. v. Schnabel*, 504 P.2d 847, 854 (Alaska 1972) (citing *Merrill v. Faltin*, 430 P.2d 913, 915 (Alaska 1967)).

[9]     *Hicks v. Pleasants*, 158 P.3d 817, 820 (Alaska 2007) (quoting *Lovell v. Lovell*, 645 P.2d 151, 152 (Alaska 1982)).

join, either as independent or as alternate claims, as many claims either legal or equitable or both as the party has against an opposing party."

Adam does not argue that the superior court's decision to accept Christina's amended complaint did not serve justice. Rather, he argues that joinder of tort and divorce claims was impermissible. Adam incorrectly interprets Alaska law.

We have explained that *mandatory* joinder of tort claims in divorce actions fails to serve the administration of justice.[10] "[R]equiring joinder of tort claims in a divorce action could unduly lengthen the period of time before a spouse could obtain a divorce and result in such adverse consequences as delayed child custody and support determinations."[11] But we have never stated that joinder of tort claims in divorce actions is impermissible.[12]

We emphasize that trial courts must use extreme caution when considering a tort claim in a divorce action and that bifurcation may be warranted. In this case joining the tort claim did not delay the court's divorce, custody, and support determinations and did not prejudice the parties. Adam's requests for time to obtain counsel, requests for continuances, and recusal motions delayed this case, not Christina's request to join her tort claim. On the facts of this case, the superior court's decision allowing Christina to amend her complaint to include her tort claim was not an abuse of discretion.

---

[10]    *See Nelson v. Jones*, 787 P.2d 1031, 1034 (Alaska 1990) ("Although joinder is permissible, the administration of justice is better served by keeping tort and divorce actions separate . . . . Divorce actions will become unduly complicated if tort claims must be litigated in the same action." (quoting *Stuart v. Stuart*, 421 N.W.2d 505, 508 (Wis. 1988))).

[11]    *Id.* (quoting *Stuart*, 421 N.W.2d at 508).

[12]    *Cf. id.*

**B.     The Superior Court's Interim Child Support Rulings Were Not Abuses Of Discretion.**

The superior court awarded Christina $306.48 in interim monthly child support beginning July 2010 based on the financial information Christina and Adam submitted. Adam amended his child support affidavit in January 2011, but did not move to modify his child support obligation until April 15. The superior court later reduced Adam's monthly payments to $202.48 effective the date Adam filed his motion to modify. The court denied Adam's "request for retroactive modification," explaining "[u]nder Civil Rule 90.3(h), child support arrearage may not be modified retroactively." On appeal Adam argues that the superior court erred and abused its discretion by: (1) entering its initial interim child support order; and (2) refusing to retroactively modify his child support obligation.[13]

When the superior court issued the interim child support award Christina had primary physical custody of their son. Under Rule 90.3(a), when one parent has primary custody child support is calculated at 20% of the other parent's adjusted monthly income. The only information Adam provided in support of his original child support affidavit was a single pay stub indicating he had earned $863.64 before taxes in a two-week pay period and had earned year-to-date income of $1,232.76 in 2010. The superior court explained that its "calculation is based on an extrapolation of the numbers from [Adam's] opposition." Treating Adam's pay stub as representative of Adam's two-week income,

---

[13]     "We reverse child support awards only if the superior court abused its discretion or applied an incorrect legal standard." *Koller v. Reft*, 71 P.3d 800, 804 (Alaska 2003) (citing *Beaudoin v. Beaudoin*, 24 P.3d 523, 526 (Alaska 2001)). "An abuse of discretion is found only where we are left with 'a definite and firm conviction, after reviewing the whole record, that the trial court erred in its ruling.' " *Hicks v. Pleasants*, 158 P.3d 817, 820 (Alaska 2007) (quoting *Lovell v. Lovell*, 645 P.2d 151, 152 (Alaska 1982)).

the superior court calculated that $306.48 was 20% of Adam's adjusted monthly income.[14] Although Adam later showed that he did not actually earn $863.64 every two weeks, he submitted no additional information with his original affidavit. Thus the court's decision extrapolating Adam's annual income from the pay stub it received was not an abuse of discretion and was well within the court's "broad equitable powers to fashion a child support award."[15]

Rule 90.3(h)(2) bans retroactive child support modification — "[c]hild support arrearage may not be modified retroactively." The interim child support order clearly cautioned both parties to notify the court immediately if their situation changed because "child support cannot be changed retroactively." Adam filed his amended child support affidavit in January 2011 but did not move to modify child support until April 15. We have explained that "[t]he only documents that satisfy the requirements of Rule 90.3 are motions or petitions for modification; these establish the date from which a modification can be made."[16] The relevant date is the date Adam's motion was served;[17] his submission of an amended child support affidavit did not satisfy the strict requirement under Rule 90.3(h)(2). The court's application of Rule 90.3 to modify child support only from the date Adam's modification motion was served therefore was not an abuse of discretion.

---

[14] Adam's income was $863.64 before taxes and $707.26 after taxes. Dividing $707.26 by 2 establishes his weekly after-tax income at $353.63. Multiplying by 52 weeks for a yearly total and dividing by 12 months establishes Adam's monthly income at $1,532.40; and 20% of $1,532.40 is $306.48, as the superior court calculated.

[15] *Coghill v. Coghill*, 836 P.2d 921, 924 (Alaska 1992) (quoting *Smith v. Smith*, 673 P.2d 282, 283 (Alaska 1983)) (internal quotation marks omitted).

[16] *Wright v. Wright*, 22 P.3d 875, 879 (Alaska 2011).

[17] Alaska R. Civ. P. 90.3(h)(2).

**C.     The Superior Court Erroneously Failed To Consider Whether Adam's Gifts Should Have Provided A Credit Against His CSSD-Imposed Child Support Arrearage.**

Adam argues the superior court abused its discretion by refusing to credit his expenditures on gift cards and purchases for his son between April and June 2010 against his CSSD-imposed child support arrearage. The interim child support order established Adam's monthly obligation and set his first payment date for July 1, 2010. In November CSSD sent Adam an order explaining that he owed arrears for January through June 2010.

"Whether a support order exists or not, '[a] parent is obligated both by statute and at common law to support his or her children.' "[18]

> When the agency establishes an ongoing support obligation, or at any time after an ongoing support obligation has been established by a tribunal of this or another state, the agency may issue a notice and finding of financial responsibility that sets the support obligation for periods before the effective date of the ongoing support obligation.[19]

CSSD therefore had authority to hold Adam financially responsible for the time Christina had custody of their son before the superior court's interim order took effect.

CSSD regulations allow for crediting direct payments to the custodial parent, and even payments in kind, in certain limited situations.[20] But Adam's expenditure on gift

---

[18]     *Crayton v. Crayton*, 944 P.2d 487, 489 (Alaska 1997) (alteration in original) (quoting *Matthews v. Matthews*, 739 P.2d 1298, 1299 (Alaska 1996)).

[19]     15 Alaska Administrative Code (AAC) 125.105(a) (2012).

[20]     15 AAC 125.105(b)-(c).

cards is not one of the specifically listed situations.[21] Adam alleged that CSSD informed him they could only accept his gift card purchases as "proof of support" if the superior court included this finding in the interim child support order.

The superior court provided three reasons for denying Adam's request: (1) "[t]he gifts occurred before any child support order was in place"; (2) "the gifts do not relate to any current or past child support"; and (3) "the gifts would not be counted against a child support obligation based on the language in . . . the child support order."[22]

The superior court's statements did not adequately address Adam's request for a credit. Adam was not requesting credit against his arrearage accrued after the interim support order's effective date, he was requesting credit for the arrearage CSSD imposed for January through June 2010 — the six months before the order's effective date.

Generally gifts and voluntary payments to children should not be credited against child support arrears because "such voluntary payments to the children quite often are intended for particular purposes whereas the manner in which child support payments are used to meet the children's basic needs is left to the discretion of the parent or guardian with custody."[23] But we have explained that this general rule "does not apply where . . . no child support order exists and the parties have not independently reached

---

[21]  *Id.*

[22]  Paragraph 16(a) of the support order states "[y]ou must pay the amount of support stated in this order. You cannot give gifts, clothes, food, or other things instead of paying this money."

[23]  *Young v. Williams,* 583 P.2d 201, 203 (Alaska 1978) (citation omitted).

a clear agreement as to custody and their respective support obligations."[24] In crafting a child support order a trial court may credit money spent to support children after separation against a retroactive child support obligation.[25]

Although the superior court might have agreed with Christina and found that gift cards for specific stores were an attempt to control her and were inadequate for a credit against Adam's child support arrearage, it abused its discretion by simply ignoring these payments and refusing to consider them as child support without explanation. We therefore remand for the superior court to determine whether Adam is entitled to credit for his expenditures against the CSSD-imposed arrearage.

D.     **The Superior Court's Decision To Proceed With Trial After Adam Failed To Appear Was Not An Abuse Of Discretion.**

Adam did not appear at the August 25, 2011 trial. On August 22 Adam mailed the superior court a notice attempting to explain his absence. The court received this notice the day before trial. Adam did not move for a continuance, instead stating "I would move this court to continue the trial but I feel that it would be an attempt made in vain. This Court has already made it abundantly clear that the trial will not be postponed any longer." On appeal Adam argues that the superior court erred and abused its discretion by proceeding with the trial in his absence.[26]

Adam refers to the superior court's March 3, 2011 order highlighting numerous trial delays Adam had caused including: (1) an oral request for the judge's

---

[24]     *Ogard v. Ogard*, 808 P.2d 815, 817 (Alaska 1991).

[25]     *See id.* at 816-17.

[26]     *See Shooshanian v. Dire*, 237 P.3d 618, 623 (Alaska 2010) (explaining that "[r]efusal to grant a continuance is an abuse of discretion when a party has been deprived of a substantial right or seriously prejudiced" (quoting *Sigglekow v. Sigglekow*, 643 P.2d 985, 986-87 (Alaska 1982))) (internal quotation marks omitted).

recusal; (2) a June 2010 request for a five-month continuance for Adam to retain counsel; (3) a December 2010 motion for continuance for more time to retain counsel; and (4) a January 2011 motion for continuance for his counsel to prepare.[27] The court stated that "[w]hen the court said at the December 15th hearing that no further continuances would be granted, it meant it." Adam implicitly argues that this statement deprived him of the right to file for a continuance.

The superior court's statement did not explicitly bar future continuances, nor did the court threaten sanctions for future motions. We interpret the superior court's statement as a warning, not a bar on future continuances. It is apparent that Adam did not interpret the court's December 15, 2010 statement as a bar on future continuances — he later received a continuance of the domestic violence hearing scheduled for January 13, 2011; and he moved for the judge's recusal on March 29, 2011, the date set for trial, causing the court to vacate and reschedule the trial. When the superior court then proposed setting trial for June 13, 2011, Adam submitted evidence he would be traveling out of state; this caused the trial to be set in August 2011. Thus, it is apparent that both Adam and the superior court recognized that further continuances were possible.

Adam's belief that a motion for continuance would be "an attempt made in vain" is not the same as a belief that he was not allowed to file for a continuance. Only on appeal does Adam state that he refrained from filing a motion for continuance because he had no choice and did not want to be deemed a vexatious litigant.

The superior court's findings of fact and conclusions of law explained that Adam had notice of the trial, used the court system in attempting to control the litigation, filed for numerous continuances, dragged the case out for almost two years, and then on

---

[27]     An attorney entered an appearance on Adam's behalf on December 22, 2010, but withdrew on February 4, 2011. Other than this short time period, Adam has been a pro se litigant in the superior court and on appeal.

one day's notice simply did not show up or seek to appear telephonically. The superior court found Adam's litigation tactics were an intentional, vexatious attempt to control Christina, increase her litigation costs, and delay trial.

Adam does not dispute receiving notice of the August 2011 trial date or his prior delays of the trial; he states that he had good reason to leave Alaska and could not afford to return. But the evidence Adam submitted to establish that he would be traveling and unavailable for the proposed June trial date included a round-trip ticket with a return flight scheduled. The superior court did not abuse its discretion by proceeding to trial in Adam's absence.

**E.     The Superior Court Decided This Case On The Merits And Did Not Enter Default Judgment.**

Adam argues that the superior court erred and abused its discretion by not first requiring a motion before entering default on the technical basis that Adam failed to appear. Because the superior court proceeded to trial and entered a judgment on the merits rather than entering default judgment, we do not need to address the legal standard for default judgments.

Adam cites the summary of proceedings from the August 2011 trial and contends the superior court orally entered default judgment. Although the summary of the proceedings contains the statement "this is a default hearing," on the audio recording the superior court judge states "this is *essentially* a default hearing." After that statement the superior court held a trial. The court listened to Christina's testimony and evidence, made sure there was a record, and entered its findings of fact and conclusions of law.

We allow ex parte trials on the merits when one party answers but fails to appear at trial.[28] When a trial court enters a default judgment, the factual allegations of

---

[28]     *See, e.g.*, *Bartels v. Bartels*, Mem. Op. & J. No. 1349, 2009 WL 2973557, (continued...)

the party who has not defaulted are generally taken as true and a non-defaulting plaintiff does not need to prove factual assertions by a preponderance of the evidence.[29]  Here the superior court proceeded to trial, listened to Christina's evidence, and did not shift the burden of proof.  We reject Adam's assertion that the trial court entered default judgment.

### F.     Adam Failed To Timely Appeal The Superior Court's Decisions On His Domestic Violence Petition.

The superior court denied Adam's ex parte and long-term domestic violence order petition in March and April 2010.  Final judgment in the divorce proceedings was entered on September 28, 2011.  Generally, "[a] notice of appeal shall be filed within 30 days from the date shown in the clerk's certificate of distribution on the judgment appealed from . . . ."[30]  We granted Adam's request to file a late appeal of the divorce proceedings in January 2012.

On February 21, 2012, Adam moved to consolidate the superior court's final judgment on his domestic violence petition into this appeal.  We granted consolidation only to the extent that the record from each hearing "will be considered part of the record

---

[28]     (...continued)
at *4 (Alaska Sept. 16, 2009) (affirming when superior court explicitly denied a request to enter default judgment, conducted trial with only one party present, and required evidence from party who appeared); *Varilek v. McRoberts*, Mem. Op. & J. No. 1321, 2008 WL 5192385, at *8 (Alaska, Dec. 10, 2008) (upholding superior court grant of summary judgment in favor of defendant who failed to appear at trial after weighing available evidence and finding plaintiff failed to meet evidentiary burden); *Alyssa B. v. State, Dep't of Health & Soc. Servs, Div. of Family & Youth Servs.*, 165 P.3d 605, 614-16 (Alaska 2007) (deciding it was not improper, or a procedural due process violation, to proceed with parental rights termination trial without child's mother after finding mother voluntarily failed to appear).

[29]     *Valley Hosp. Ass'n, Inc. v. Brauneis*, 141 P.3d 726, 728 (Alaska 2006); *Syndoulos Lutheran Church v. A.R.C. Indus., Inc.*, 662 P.2d 109, 112 (Alaska 1983).

[30]     Alaska R. App. P. 204(a)(1).

on this appeal."  Adam now argues that the superior court abused its discretion by denying his petition.  Adam provides no reason why we should consider these arguments almost two years after he received final judgment denying his petition.  We granted consolidation only to supplement the record in this appeal with the superior court's other decisions.  We will not consider Adam's untimely appeal of the superior court's 2010 decisions.

### G. The Superior Court Did Not Abuse Its Discretion By Granting Christina's Domestic Violence Petition.

Adam challenges the superior court's decisions extending Christina's ex parte domestic violence protective order and granting Christina's long-term domestic violence protective order.  Adam argues:  (1) the superior court abused its discretion by denying his motions to remove the ex parte order and by allowing the ex parte order to stay in effect for ten months; and (2) the superior court erred and abused its discretion by granting the long-term protective order.

#### 1. Adam's challenge of the ex parte protective order is moot.

Adam argues the superior court abused its discretion by denying his motions to dismiss, modify, or dissolve the ex parte protective order; denying his request for an expedited hearing; and allowing the ex parte protective order to remain in effect for ten months.[31]  "Under ordinary circumstances, we will refrain from deciding questions where events have rendered the legal issue moot.  A claim is moot if it has lost its character as a present, live controversy."[32]  Because the ex parte protective order is no longer in effect,

---

[31]  AS 18.66.110 (a) provides:  "An ex parte protective order expires 20 days after it is issued unless dissolved earlier by the court at the request of either the petitioner or the respondent and after notice and, if requested, a hearing."

[32]  *Kodiak Seafood Processors Ass'n v. State*, 900 P.2d 1191, 1195 (Alaska
(continued...)

any alleged error or abuse cannot be rectified by revoking the order. These issues are therefore moot, and we will not address them.

### 2. The superior court did not err or abuse its discretion by granting Christina a long-term protective order.

Adam argues that the superior court abused its discretion by granting the long-term protective order. We review decisions to grant or deny protective orders for abuse of discretion.[33] "We review the factual findings supporting issuance of the protective order[s] for clear error. A finding of fact is clearly erroneous when the reviewing court is left with a definite and firm conviction that the trial court has made a mistake."[34]

Alaska Statute 18.66.100 provides that "[a] person who is or has been a victim of a crime involving domestic violence may file a petition in the district or superior court for a protective order against a household member." After making specific findings that Adam committed domestic violence, including criminal mischief, harassment, stalking, and assault, the superior court stated "[t]here were so many acts of domestic violence against Christina . . . the court cannot count them."

The superior court found Adam committed domestic violence against Christina by destroying her cell phone in Kansas, harassing her with sexual and violent text messages, stalking her, and assaulting her. While Adam disputes some of the superior court's findings, he does not dispute destroying Christina's cell phone, sending her a text message implying a murder-suicide, or following her. Additionally

---

[32]    (...continued)
1995) (internal citations omitted).

[33]    *Cooper v. Cooper*, 144 P.3d 451, 454 (Alaska 2006).

[34]    *McComas v. Kirn*, 105 P.3d 1130, 1132 (Alaska 2005) (internal citations omitted).

photographs in the record showing Christina's bruises support the superior court's finding that Adam assaulted her. Because the superior court did not clearly err by finding Adam committed criminal mischief, stalking, and assault, granting Christina a long-term protective order was not an abuse of the court's discretion.

## H. The Superior Court Did Not Abuse Its Discretion By Awarding Christina Custody And Limiting Adam's Visitation.

The superior court awarded Christina sole legal and primary physical custody and denied Adam visitation until he completed a domestic violence intervention program, underwent a psychiatric evaluation, and completed a parenting program. When making a custody determination in a divorce, trial courts generally must consider statutory best interest factors.[35] But there also is a rebuttable presumption that a parent with a "history of domestic violence" may not receive sole or joint custody.[36] And a parent with a history of domestic violence will generally not receive unsupervised visitation until completing a parenting education program and batterer's intervention program.[37] A parent has a history of domestic violence if the parent caused serious injury in one incident, or committed more than one incident of domestic violence.[38]

The superior court found Adam had a history of perpetrating domestic violence and should not receive any custody or unsupervised visitation. But the court also conducted a best interests analysis under AS 25.24.150(c), and came to the same

---

[35]      AS 25.24.150(c).

[36]      AS 25.24.150(g).

[37]      AS 25.24.150(j); *cf. Stephanie F. v. George C.*, 270 P.3d 737, 752-53 (Alaska 2012) (holding that AS 25.24.150(g)'s rebuttable custody presumption against perpetrators of domestic violence "may be overcome by means other than the completion of an intervention program for batterers").

[38]      AS 25.24.150(h).

conclusion under its best interests analysis: "Visitation therefore should not be permitted unless and until [Adam] has completed a batterer's intervention program, a psychiatric evaluation with treatment, and a parenting class[] . . . ."

Adam challenges the superior court's custody award based on the domestic violence presumption, arguing that a custody determination may not be based on default findings of domestic violence, but does not challenge the best interests analysis. We therefore affirm the final custody decision based on the best interests of the child without reaching Adam's domestic violence arguments.

## I. Awarding Christina Full Costs And Attorney's Fees Was An Abuse Of Discretion.

Adam challenges the superior court's decision awarding Christina full costs and attorney's fees of $50,380.86. He argues the superior court abused its discretion by: (1) failing to address the parties' relative economic situations; (2) failing to make explicit findings of vexatious or bad faith conduct; (3) finding Adam was a vexatious, bad-faith litigant; and (4) failing to identify the exact increase in Christina's litigation costs that resulted from Adam's vexatious conduct.

Under AS 25.24.140 a court adjudicating a divorce action may award expenses, including "attorney fees and costs that reasonably approximate the actual fees and costs required to prosecute or defend the action." "We have repeatedly held that cost and fee awards in a divorce are not to be based on the prevailing party concept, but primarily on the relative economic situations and earning powers of the parties."[39] But

> [t]he trial court has the discretion to increase an award of attorney's fees where a party has acted in bad faith or engaged

---

[39]     *Lone Wolf v. Lone Wolf*, 741 P.2d 1187, 1192 (Alaska 1987) (citing *Siggelkow v. Siggelkow*, 643 P.2d 985, 989 (Alaska 1982); *Cooke v. Cooke*, 625 P.2d 291, 293 (Alaska 1981); *Johnson v. Johnson*, 564 P.2d 71, 76-77 (Alaska 1977); *Burrell v. Burrell*, 537 P.2d 1, 6-7 (Alaska 1975)).

in vexatious conduct. However, one party's misconduct does not authorize the court to disregard the relative economic situations and earning powers of the parties. . . . [T]he court must first determine what fee award would be appropriate under the general rule, and only then increase the award to account for a party's misconduct. Failure to follow this two-step process constitutes an abuse of discretion.[40]

The superior court explicitly addressed the parties' relative economic situations when awarding Christina actual costs and fees.[41] We reject Adam's argument that the superior court failed to do so.

Adam next argues that the superior court "never made any explicit findings of bad faith or vexatious conduct when it departed from the rule that the [parties] will bear our own costs." He further argues that the superior court found his behavior vexatious simply based on the volume of his court filings. But the superior court made multiple findings of vexatious conduct, such as filing frivolous and repeat motions, ignoring court instructions, moving repeatedly for disqualifications and continuances, and intentionally tormenting Christina through litigation.

We have upheld fee awards based on a trial court's finding that one party's

---

[40] *Kowalski v. Kowalski*, 806 P.2d 1368, 1373 (Alaska 1991) (internal citations omitted).

[41] The superior court found:

Neither of the parties have much in the way of income. [Christina] is a full time student at UAA and earns approximately $20,000 per year working part time. [Adam's] income at the time he presented his Child Support Guidelines Affidavit was less than that. Based upon economics alone, neither party could afford to incur attorney's fees and under ordinary circumstances there would not be an award of attorney's fees.

conduct dramatically increased the other's litigation cost.[42] Here the superior court found Christina's significant costs and attorney's fees were the direct result of Adam's vexatious conduct, and "[w]ere it not for [Adam's] intentional outrageous acts none of this would have occurred." Evidence in the record amply supports this determination.

Nonetheless we also have emphasized that when a trial court finds a litigant's vexatious conduct increased an opposing party's costs "the court must identify the nature and amount of these increased costs."[43] The superior court did not identify specific increased costs associated with Adam's vexatious behavior. Rather, the court awarded Christina full costs and fees after finding Adam's conduct throughout the litigation intentional, vexatious, and outrageous. The superior court opined "[i]t is impossible to separate the components of the tort claim, domestic violence action, and the domestic relations matter, as they are all inter-related and all part of [Adam's] insatiable desire to control [Christina]."

It is difficult to conceive of a divorce proceeding in which every action taken by a party was vexatious and caused the other party unnecessary expense. For example, Adam's later litigation behavior had no impact on the costs Christina incurred in filing her complaint. Additionally Adam did not file only frivolous motions — he properly and succesfully moved for a child support modification after the superior court miscalculated his income. Finally, Adam's failure to appear for trial limited, rather than increased, Christina's attorney's fees for the actual trial, which also included a separate tort claim. We have upheld an award of full reasonable attorney's fees incurred as a result of

---

[42]    *See, e.g.*, *Rodvik v. Rodvik*, 151 P.3d 338, 351-52 (Alaska 2006).

[43]    *Kowalski*, 806 P.2d at 1373 (Alaska 1991).

vexatious litigation behavior,[44] but because it was error not to identify the nature and specify the amount of the increased divorce litigation costs Adam's vexatious behavior caused, we vacate the award and remand for renewed consideration.

## V.    CONCLUSION

We REMAND for renewed consideration of:  (1) Adam's right to a credit against his CSSD-imposed child support arrearage; and (2) the attorney's fees award. We otherwise AFFIRM the superior court's rulings and judgments.

---

[44]    *See, e.g.*, *Worland v. Worland*, 193 P.3d 735, 743 (Alaska 2008) (affirming award granting former wife full reasonable attorney's fees to specifically cover her fees arising out of post-settlement pleadings when former husband's post-settlement strategy included "a series of unsubstantiated allegations and legally baseless claims" that "unreasonably protracted [the] litigation").