*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| JOSHUA CHILDS, | ) | |
| | ) | Supreme Court No. S-14643 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-05-13075 CI |
| v. | ) | |
| | ) | O P I N I O N |
| CHRISTINA CHILDS, | ) | |
| | ) | No. 6834 – October 11, 2013 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Alex Swiderski, Judge.

Appearances: Joshua Childs, pro se, Fort Polk, Louisiana, Appellant. Christina Childs, pro se, Fairbanks, Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

FABE, Chief Justice.

## I.    INTRODUCTION

A mother and father of two minor children dissolved their marriage in 2005. The mother was awarded sole legal and physical custody of the children and the father was ordered to pay child support. The father then joined the United States Army in 2006. Five years later, the mother filed a motion to modify the standing child support award, seeking to increase the father's support obligation due to an increase in his

income. Although the first notice of the motion that the mother sent to the father was procedurally defective, after the superior court notified the mother of the defects, she sent a corrected notice. The father did not respond to the motion to modify until the superior court informed him that it was prepared to award child support in the amount requested by the mother if the father did not file an opposition. The father then opposed the motion, providing his relevant pay stubs, W-2s, and tax returns. He also argued that the Servicemembers Civil Relief Act protected him from adverse civil actions because he was actively serving in the United States Army and contended that the mother had not properly served him with notice of the modification proceeding. Finally, he maintained that the superior court should deduct the Basic Allowance for Housing that the father received as a servicemember from his income calculation. The superior court modified the parties' child support award without holding a hearing, ordering the father to pay increased child support.

The father now appeals, raising three arguments. He first contends that he was entitled to a stay of the child support modification proceeding under the Servicemembers Civil Relief Act. But because he did not qualify for a stay under the Act, and because he actively participated in the proceeding, the superior court did not abuse its discretion in declining to issue a stay.

The father next contends that his right to due process was violated because the mother did not use certified mail to serve him and because the superior court ordered modification of child support without first holding a hearing. But there was no due process violation: The mother's corrected service of process satisfied the Alaska Rules of Civil Procedure, the father had ample notice of the proceeding, and a hearing was not required in this case because there were no facts in dispute.

The father finally argues that the superior court abused its discretion in calculating his child support obligation to include his Basic Allowance for Housing. But

the superior court correctly included the military housing allowance in the father's adjusted income as Alaska Civil Rule 90.3 directs.

We thus affirm the superior court's decisions in all respects.

## II. FACTS AND PROCEEDINGS

Joshua and Christina Childs were married in Alaska in 2002. After dissolving their marriage in 2005, Joshua and Christina decided that Christina would have sole legal and physical custody of their two minor children. A December 2005 child support order required Joshua to pay Christina $540.85 per month in support for both children.

Joshua began serving in the United States Army in 2006. He served a tour of combat duty in Afghanistan from June 27 to September 30, 2011. After returning from Afghanistan, Joshua was stationed at Fort Polk in Louisiana.

On September 30, 2011, Christina filed a motion in the superior court to modify child support, contending that Joshua's income had increased and that an upward modification was warranted. Christina also submitted a child support guidelines affidavit in which she estimated that Joshua's monthly child support obligation should be $1,114.83. But she acknowledged in the affidavit that she did not know Joshua's actual income.

Because Christina failed to complete the certificate of service or sign the Notice of Motion to Change Custody, Support or Visitation,[1] the superior court clerk promptly informed Christina that her notice was procedurally defective. On October 6,

---

[1] The Notice of Motion to Change Custody, Support or Visitation is a document the Alaska Court System requires be sent to an opposing party in a child custody, child support, or child visitation modification proceeding. This form must accompany a copy of the actual motion submitted to the superior court requesting the change. *See* ALASKA COURT SYSTEM, http://www.courts.alaska.gov/forms/dr-701.pdf (last visited Sept. 5, 2013).

2011, Christina completed a new copy of the motion, this time signing and completing the certificate of service.

Initially, Joshua did not file an opposition to the motion to modify. On November 4, 2011, the superior court issued an order informing Joshua that it planned to modify the standing child support order according to Christina's estimation of Joshua's income if Joshua did not file an opposition within ten days. Joshua responded by filing an opposition, which included a completed child support guidelines affidavit indicating that his monthly obligation should be $521.59. Joshua also submitted supporting documentation including pay stubs, W-2s, and tax returns. Although Joshua's initial opposition was determined by the superior court to be technically deficient, Joshua was given the opportunity to submit corrected documents, and he did so.

In his opposition, Joshua argued that the Basic Allowance for Housing that the military provided to him and his family in Louisiana should not be factored into a determination of his income because the allowance was not part of his take-home pay and instead went directly to offset the cost of housing. He also argued that he had not received any documents from Christina via certified mail, and that "[a]ll information ha[d] come directly through the United State[s] Post Office to [his] mailbox," which he contended violated his right to due process. And he argued that he was protected by the Servicemembers Civil Relief Act from civil litigation while he was on active military duty.

On February 6, 2012, the superior court ordered modification of Joshua's child support obligation without first holding an evidentiary hearing. Under the new award, Joshua was ordered to pay Christina $901 per month in child support for both children. Joshua now appeals.

## III. STANDARD OF REVIEW

We review a modification of child support for abuse of discretion, "which we will find only when, based on a review of the entire record, we are left with a definite and firm conviction that the trial court made a mistake."[2] But a trial court's decision as to the proper method of calculating child support "is a question of law, which we review de novo, adopting the rule of law that is most persuasive in light of precedent, reason, and policy."[3]

We review a trial court's procedural decisions for abuse of discretion.[4] But a trial court's decision not to hold an evidentiary hearing is subject to our independent review.[5] And whether a trial court violated a party's due process rights is a question of law, which we review de novo.[6]

A trial court's interpretation of the provisions of the Servicemembers Civil Relief Act is a matter of law, which we review de novo using our independent judgment.[7] We have not previously addressed the standard that governs the review of a trial court's

---

[2]  *Swaney v. Granger*, 297 P.3d 132, 136 (Alaska 2013) (citing *Faulkner v. Goldfuss*, 46 P.3d 993, 996 (Alaska 2002)).

[3]  *Id.* (citing *Faulkner*, 46 P.3d at 996).

[4]  *Brotherton v. Warner*, 240 P.3d 1225, 1228 (Alaska 2010) (citing *Rockstad v. Erikson*, 113 P.3d 1215, 1220 (Alaska 2005)).

[5]  *Hartley v. Hartley*, 205 P.3d 342, 346 (Alaska 2009).

[6]  *Helen S.K. v. Samuel M.K.*, 288 P.3d 463, 473 (Alaska 2012) (citing *James v. State, Dep't of Corr.*, 260 P.3d 1046, 1050 (Alaska 2011)).

[7]  *See Estate of Kim ex rel. Alexander v. Coxe*, 295 P.3d 380, 386 (Alaska 2013) (citing *State v. Native Vill. of Tanana*, 249 P.3d 734, 737 (Alaska 2011); *John v. Baker*, 982 P.2d 738, 744 (Alaska 1999)) (applying our independent judgment to interpretation of a federal statute).

decision whether to stay a proceeding under the Servicemembers Civil Relief Act. In *Boone v. Lightner*, the United States Supreme Court reviewed a trial court's decision not to continue a proceeding under the Soldiers' and Sailors' Civil Relief Act of 1940, the precursor to the Servicemembers Civil Relief Act, for abuse of discretion.[8] We have also recognized that the abuse of discretion standard governs the review of a trial court's decision whether to stay a proceeding in other contexts.[9] We therefore conclude that a trial court's decision whether to grant a stay under the Servicemembers Civil Relief Act is reviewed under the abuse of discretion standard.

## IV. DISCUSSION

### A. There Was No Violation Of The Servicemembers Civil Relief Act.

Joshua argues that he should not have been required to participate in this child support modification matter because he is a member of the military on active duty. But the Servicemembers Civil Relief Act, on which Joshua relies, does not preclude all civil actions against members of the military. The Act "provide[s] for the temporary suspension of judicial and administrative proceedings and transactions that may

---

[8]    319 U.S. 561, 575 (1943); *see also Shelor v. Shelor*, 383 S.E.2d 895, 896 (Ga. 1989) ("A trial court has a large degree of discretion in determining whether to grant a stay under the [Soldiers' and Sailors' Civil Relief] Act." (citing *Boone*, 319 U.S. at 575)). *But see Lackey v. Lackey*, 278 S.E.2d 811, 812 (Va. 1981) (per curiam) (reviewing trial court's denial of a servicemember's request for a continuance for clear error).

[9]    *See, e.g.*, *Stone v. Int'l Marine Carriers, Inc.*, 918 P.2d 551, 554 (Alaska 1996) (applying the abuse of discretion standard to a trial court's ruling on a motion to stay discovery); *Powell v. City of Anchorage*, 536 P.2d 1228, 1229 (Alaska 1975) (stating that whether a stay of an injunction pending appeal will be granted is a question directed to the sound discretion of the superior court); *see also State, Dep't of Transp. & Pub. Facilities v. Miller*, 145 P.3d 521, 528 (Alaska 2006) (reviewing a denial of a continuance for abuse of discretion).

adversely affect the civil rights of servicemembers during their military service."[10]

Relevant to this appeal, the Act allows for an active duty servicemember to seek a stay of a civil action.[11] If an active duty servicemember wishes to stay a proceeding, he or she can seek a stay in the superior court by complying with the specific requirements set out in § 522(b)(2) of the Act, which provides:

> An application for a stay . . . shall include the following:
>
> (A)  A letter or other communication setting forth facts stating the manner in which current military duty requirements materially affect the servicemember's ability to appear and stating a date when the servicemember will be available to appear.
>
> (B)  A letter or other communication from the servicemember's commanding officer stating that the servicemember's current military duty prevents appearance

---

[10]  50 U.S.C. app. § 502(2) (Supp. 2013).  The Act defines a servicemember as a member of the uniformed services.  50 U.S.C. app. § 511(1).  The term "uniformed services" means any member of the armed forces, which includes the Army, Navy, Air Force, Marine Corps, and Coast Guard.  10 U.S.C. § 101(a)(4)-(5) (2010).  And a servicemember will be deemed to be in military service if the servicemember is on active duty.  50 U.S.C. app. § 511(2)(A)(i).  "[A]ctive duty" is defined as "full-time duty in the active military service of the United States."  10 U.S.C. § 101(d)(1).  The parties do not dispute that at the time of the proceeding Joshua was a member of the armed forces, actively serving in the United States Army.

[11]  50 U.S.C. app. § 522(a) provides:

> This section applies to any civil action or proceeding, including any child custody proceeding, in which the plaintiff or defendant at the time of filing an application under this section —
>
> (1)  is in military service or is within 90 days after termination of or release from military service; and
>
> (2)  has received notice of the action or proceeding.

and that military leave is not authorized for the servicemember at the time of the letter.

Thus before issuing a stay under the Act, the trial court is required to consider whether a servicemember's ability to participate in a civil action would be materially affected by the servicemember's duties.[12] Although our prior decisions relating to the Act have not dealt specifically with the requirements of § 522(b)(2), numerous courts, including the United States Supreme Court, have concluded that a servicemember invoking a stay under the Act must make a showing that the servicemember's rights or ability to present a defense would be materially affected by the servicemember's military duties.[13] A servicemember is not entitled to a stay simply by virtue of serving in the armed forces;

---

[12]        50 U.S.C. app. § 522(b)(2).

[13]        *See, e.g.*, *Boone*, 319 U.S. at 572-73 (holding that the mere showing that the defendant was in Washington, D.C. in military service did not render a continuance mandatory where the defendant's ability to conduct a defense was not materially affected by his military service); *Hackman v. Postel*, 675 F. Supp. 1132, 1133-34 (N.D. Ill. 1988) ("[A] stay is not mandated simply because the moving party is in the military service. Courts interpreting § 521 have observed that for the movant to invoke the protection of the Act, he must make a showing of his actual unavailability and that his rights would be adversely affected by virtue of his absence from trial." (citing *Johnson v. Johnson*, 139 P.2d 33, 42 (Cal. App. 1943))); *Christine M. v. Superior Court*, 82 Cal. Rptr. 2d 220, 227 (Cal. App. 1999) (applying provision of the Soldiers' and Sailors' Civil Relief Act to find no abuse of juvenile court's discretion in denying a stay "where a 'father failed to demonstrate he was unable to comply with [a court-ordered parenting plan] by reason of his attendance in the military and that a stay was needed to protect the father's interests or to permit him to defend the action' "); *Wilson v. Butler ex rel. Butler*, 584 So. 2d 414, 417 (Miss. 1991) (finding no error by trial court in rendering a paternity judgment against a father who did not present any evidence of his inability to defend himself in court as a consequence of his military service); *Palo v. Palo*, 299 N.W.2d 577, 579 (S.D. 1980) (affirming a denial of continuance on grounds that appellant failed to show that he was unable to obtain leave or had even tried to obtain leave and therefore had not shown his actual unavailability or that his rights would be adversely affected by his absence at trial).

the servicemember must show that, due to military service, the servicemember's ability to raise a claim or defense would be prejudiced if a stay were denied.

Joshua does not argue on appeal that his ability to participate in the child support modification proceeding was materially affected by his military service. And the record does not include any evidence, such as a communication from Joshua's commanding officer, suggesting that his military duties prevented him from participating in the proceeding. In fact, Joshua actually participated in the modification proceeding, filing an opposition in the superior court, raising legal arguments, and providing supporting documents including pay stubs, W-2s, and tax returns. Joshua therefore was not entitled to invoke a stay under § 522(b)(2) of the Act. Under these circumstances, the superior court did not abuse its discretion in not staying the child support modification proceeding.[14]

## B. Joshua's Right To Due Process Was Not Violated.

### 1. Joshua had notice of the child support proceeding.

Joshua argues that the superior court's child support award should be reversed because Christina sent him a procedurally defective notice of her motion to

---

[14] Joshua argued in the superior court that "under the Servicemembers Civil Relief Act, adverse actions are not allowed against active duty officers" and that the Act "affords the active duty and deployed time to serve their country." These statements may have provided the superior court with sufficient information to trigger a duty to inform Joshua of the proper procedure to secure a stay under the Act. *See, e.g.*, *Larson v. State, Dep't of Corr.*, 284 P.3d 1, 8 (Alaska 2012) ("The pleadings of pro se litigants are 'held to less stringent standards than those of lawyers,' and the superior court must 'inform a pro se litigant of the proper procedure for the action he or she is obviously attempting to accomplish.' " (quoting *Capolicchio v. Levy*, 194 P.3d 373, 378 (Alaska 2008))). But even if the superior court had informed Joshua of the proper procedures, and even if Joshua had then complied with these procedures, Joshua would not have been able to obtain a stay under the Act because the record shows that he actively participated in the proceeding.

modify child support, which violated his right to due process. Christina acknowledges that "she lacked one signature on the original submission of the motion to modify," but she points out that she remedied this omission after the superior court told her to do so and that she mailed Joshua a signed copy of the motion on October 6, 2011.

Joshua argues that "[t]here is no proof of any process server, certified mail or otherwise being delivered to the Childs' residence regarding the modification." But we have previously held that Alaska Civil Rule 5 provides the appropriate procedure for serving an opposing party in a proceeding to modify the terms of a standing child support order.[15] And Civil Rule 5(b) permits service of a motion to modify "by mailing it to the . . . party's last known address."[16] Civil Rule 5 further provides that "[m]ailing of a copy means mailing it by first class United States mail. Service by mail is complete upon mailing."[17] In the trial court, Joshua complained that "[a]ll information ha[d] come directly through the United State[s] Post Office to [his] mailbox." But by mailing through the United States mail, Christina complied with Civil Rule 5.

To comply with due process, notice must be given sufficiently in advance of scheduled court proceedings so that the parties have a reasonable opportunity to prepare.[18] Here, Joshua had ample notice of Christina's motion to modify. Christina remedied her first procedurally defective notice by correcting and re-sending the required

---

[15]    *Crumpler v. State, Dep't of Revenue*, 117 P.3d 730, 733 (Alaska 2005) (per curiam) (citing *Balchen v. Balchen*, 566 P.2d 1324, 1327 (Alaska 1977)).

[16]    Alaska R. Civ. P. 5(b).

[17]    *Id.*

[18]    *Fidler v. Fidler*, 296 P.3d 11, 13 n.5 (Alaska 2013) (citing *Doe v. State*, 487 P.2d 47, 57 (Alaska 1971)); *see also Aguchak v. Montgomery Ward Co.*, 520 P.2d 1352, 1356 (Alaska 1974) (holding that due process requires notice of a hearing sufficient to convey information required to present objections).

documents to Joshua on October 6, 2011. The superior court issued an order on November 4, 2011,[19] nearly 30 days after Christina mailed Joshua the corrected notice, giving Joshua 10 additional days to file an opposition to Christina's motion. The superior court received Joshua's initial opposition on November 16, 2011 and his corrected opposition on December 5, 2011. Joshua had an opportunity to make his legal arguments and submit relevant financial documents. The superior court then issued the order modifying child support on February 6, 2012. Because the record indicates that Joshua had notice of the modification proceedings with sufficient time to prepare and present his arguments to the superior court, we conclude that Joshua's right to due process was not violated for lack of notice.[20]

### 2. There were no disputed facts to merit a hearing.

Joshua also argues that the superior court should have held an evidentiary hearing before ordering the modification of child support in this case and that failure to do so violated due process. Joshua maintains that he was "never given the opportunity to speak or be present at any hearing regarding child support." But "[a] hearing is not required for all child support disputes."[21] And we have held that a hearing is not necessary if there is no genuine issue of material fact before the superior court.[22]

---

[19]     The superior court clerk's certificate of service stated that the order was mailed to Joshua on November 7, 2011.

[20]     Because Joshua's right to due process was not violated, his argument that Christina "intentionally inflicted financial distress on [him] because there was no due process" is without merit.

[21]     *Turinsky v. Long*, 910 P.2d 590, 594 (Alaska 1996).

[22]     *See id.* (concluding that the superior court did not err in awarding child support without a hearing where the parties did not argue that the adjusted income levels used by the superior court were inaccurate).

Joshua and Christina did not dispute the accuracy of the income information that Joshua had presented to the superior court. Instead, the parties took different legal positions on the deductions from income permitted under Civil Rule 90.3. Because the parties disputed only the legal question whether Joshua's housing and meal allowances should have been included in his adjusted income under Civil Rule 90.3, the superior court was faced only with a question of law and was therefore not required to hold an evidentiary hearing.[23]

## C. The Superior Court's Child Support Award Complied With The Parental Income Guidelines In Alaska Civil Rule 90.3.

Joshua next argues that his Basic Allowance for Housing should not be included in the calculation of his income for the purpose of determining his child support obligation because the allowance is not reflected in his gross pay. Christina argues that the superior court did not err in calculating Joshua's child support obligation because Civil Rule 90.3 includes military housing allowances within the definition of adjusted annual income for the purpose of calculating child support.

Civil Rule 90.3 provides that a trial court must calculate a "parent's total income from all sources."[24] As we observed in *Berkbigler v. Berkbigler*, the question whether a military housing allowance qualifies as income is expressly addressed by the commentary to Civil Rule 90.3.[25] Specifically, the commentary advises that income includes "Armed Service Members base pay plus the obligor's allowances for quarters,

---

[23] *See, e.g., id.; Douglas v. State, Dep't of Revenue*, 880 P.2d 113, 117 (Alaska 1994) (concluding that mother's due process rights were not violated when the superior court addressed purely legal issues in assessing mother's child support obligation and did not hold an evidentiary hearing).

[24] *See* Alaska R. Civ. P. 90.3(a)(1).

[25] 921 P.2d 628, 631 (Alaska 1996).

rations, COLA and specialty pay"[26] and "perquisites or in-kind compensation to the extent that they are significant and reduce living expenses, including but not limited to employer provided housing (including military housing)."[27]

Joshua reported that in 2011 he received a Basic Allowance for Housing of $10,872. Joshua does not dispute that the Basic Allowance for Housing is "an allowance to offset the cost of housing when [a member of the military] do[es] not receive government-provided housing."[28] In fact, he asserted on appeal that the allowance "is used to provide housing for [his] current immediate family." Joshua's Basic Allowance for Housing thus constitutes income under Civil Rule 90.3 and the superior court did not err by including it in the calculation of the child support award.[29]

## V. CONCLUSION

Because Joshua did not qualify for a stay under the Servicemembers Civil Relief Act, and because the superior court did not otherwise err in ordering modification

---

[26]    Alaska R. Civ. P. 90.3 cmt. III.A.28.

[27]    *Id.* cmt. III.A.19.

[28]    Office of the Sec'y of Def., *Basic Allowance for Housing*, MILITARY COMPENSATION, http://militarypay.defense.gov/pay/bah/index.html (last visited June 26, 2013).

[29]    Joshua also claims for the first time on appeal that his Basic Allowance for Subsistence should not have been included in the calculation of his child support obligation. We decline to reach this contention because Joshua did not first raise it in the superior court. *Preblich v. Zorea*, 996 P.2d 730, 736 n.17 (Alaska 2000) (" 'Ordinarily an issue which was not raised in the trial court will not be treated on appeal.' " (quoting *Padgett v. Theus*, 484 P.2d 697, 700 (Alaska 1971))). And Joshua has not provided any argument or citation to legal authority to support his position. *See Sengul v. CMS Franklin, Inc.*, 265 P.3d 320, 330 (Alaska 2011) (concluding that appellant abandoned issues because he "failed to provide any more than cursory briefing devoid of citation to legal authority" (citations omitted)).

of Joshua's child support obligation in accordance with the guidelines set forth in Civil Rule 90.3, we AFFIRM the superior court's decision modifying child support.