NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| VERA ROSIER, | ) | |
| | ) | Supreme Court No. S-15573 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-12-09448 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| HUGH W. FLEISCHER, | ) | AND JUDGMENT[*] |
| | ) | |
| Appellee. | ) | No. 1543 – June 10, 2015 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Erin Marston, Judge.

Appearances: Vera Rosier, pro se, Anchorage, Appellant. H. Frank Cahill, Law Offices of H. Frank Cahill, Anchorage, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

## I.    INTRODUCTION

A woman sued her attorney alleging that the attorney had stolen $750,000 in settlement proceeds arising out of the woman's prior dental malpractice claim. The woman's complaint alleged conversion and legal malpractice. After the woman presented her case at trial before the superior court, the attorney moved for a directed verdict against her. Finding no evidence that a settlement of the dental malpractice claim had been reached or that any settlement proceeds existed, and no evidence of legal

---

[*]    Entered under Alaska Appellate Rule 214.

malpractice, the superior court granted the attorney's motion. We affirm the superior court's directed verdict because the evidence presented at trial, viewed in the light most favorable to the woman, was insufficient for a reasonable person to conclude that her attorney had converted settlement proceeds or committed legal malpractice.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

Vera Rosier retained Hugh Fleischer to represent her in a medical malpractice action against her dentist, Dr. Gerard Wasselle. Roger Holmes represented Dr. Wasselle, and Continental Casualty Company insured Dr. Wasselle's dental practice. Jessica Roos, a Continental claims specialist, handled Rosier's claim.

In December 2010, on Rosier's behalf, Fleischer drafted and mailed a demand letter to Dr. Wasselle seeking $750,000 to settle Rosier's dental malpractice allegation. Continental responded to the letter requesting additional information and the release of medical records. Rosier apparently became convinced that Continental had agreed to settle the matter for $750,000 and that Fleischer, in a conspiracy with Holmes and Roos, had stolen the settlement proceeds.

Rosier later testified that in December, after mailing the demand letter, Fleischer told her that a settlement was on its way. She alleged that Fleischer behaved suspiciously at a meeting about the case after "he and Roger [Holmes] decided they weren't going to give me the check." Rosier also testified that she believed Fleischer had covered up evidence of the alleged theft. She also accused Fleischer of attempting to murder her by poisoning a medical device in her home. Nevertheless, Rosier continued to retain Fleischer as her counsel after these alleged incidents.

In February 2011 Fleischer filed a complaint on Rosier's behalf against Dr. Wasselle for dental malpractice. Dr. Wasselle prevailed at summary judgment, and the superior court entered an attorney's fee award of $1,784.40 against Rosier in

June 2011. Rosier later alleged at the trial of her claims against Fleischer that the litigation of the malpractice claim was a sham "orchestrated to cover the theft of my [settlement] money."

While Fleischer's conduct during the course of his representation in the dental malpractice suit against Dr. Wasselle is the basis for most of Rosier's allegations, she also alleges malpractice in the course of other matters in which Fleischer represented her. For example, in June 2010, Fleischer prepared a proposed contract for Rosier to retain a production company to help her create a video audition tape for a television show on the Oprah Winfrey Network. And in February 2011, during the pendency of the dental malpractice matter, Fleischer filed a complaint on Rosier's behalf against her landlord. In addition, Rosier referenced a number of other matters in which she retained Fleischer to provide legal services for herself and for family members.

## B.    Proceedings

Rosier, representing herself, filed a complaint against Fleischer and "other parties" in September 2012. She alleged that Fleischer and "other parties" had stolen the $750,000 in funds paid to resolve her dental malpractice claim against Dr. Wasselle. She also alleged that Fleischer and Holmes, Dr. Wasselle's attorney, had committed legal malpractice in connection with "but not limited to . . . harassment, threats, [and] manipulations . . . to silence me in reference to the theft."

Fleischer moved for summary judgment in October 2012. Fleischer and Holmes both filed affidavits asserting that Dr. Wasselle had prevailed at summary judgment in the underlying dental malpractice case, that there had been no settlement agreement, and that the alleged theft of $750,000 was "wholly without basis or truth."

In November 2012 the superior court denied Fleischer's motion for summary judgment, reasoning that because Rosier disputed the factual statements contained in Fleischer's and Holmes's affidavits, there existed a genuine issue of

material fact. The case proceeded to a bench trial in April 2014. Rosier offered testimony explaining the series of events that led her to believe that Fleischer and others had stolen her settlement funds and pointed to the actions taken by Fleischer that she believed to be legal malpractice.

At the conclusion of Rosier's case-in-chief, Fleischer moved for a directed verdict against Rosier on both claims. The superior court granted the motion for a directed verdict. The court explained that it had construed every fact and had drawn all inferences in Rosier's favor. It noted that in order to prevail in an action for theft or conversion, a plaintiff must prove that she actually owned the property in question. The superior court concluded that although the evidence presented by Rosier might support a conclusion that Fleischer was hoping for a settlement of the dental malpractice case, it did not support a conclusion that a settlement was ever reached. Regarding Rosier's legal malpractice claim, the superior court noted that typically an expert witness is necessary for a plaintiff to prevail in a legal malpractice action and that Rosier had presented no evidence of legal malpractice in her testimony. Rosier appeals.

## III.   STANDARD OF REVIEW

"We review de novo the grant of a directed verdict . . . to determine whether the evidence, viewed in the light most favorable to the non-moving party, is such that reasonable persons could not differ in their judgment."[1] "On a motion for directed verdict, we will not 'weigh conflicting evidence or judge the credibility of witnesses.' "[2]

---

[1]   *L.D.G., Inc. v. Brown*, 211 P.3d 1110, 1117-18 (Alaska 2009) (citing *Holiday Inns of Am., Inc. v. Peck*, 520 P.2d 87, 92 (Alaska 1974)).

[2]   *Dura Corp. v. Harned*, 703 P.2d 396, 408 (Alaska 1985) (quoting *City of Whittier v. Whittier Fuel & Marine Corp.*, 577 P.2d 216, 220 (Alaska 1978)).

## IV.    DISCUSSION

The only evidence Rosier provided at trial in support of her claim that settlement funds had been stolen was her own testimony.  She asserted that Fleischer had contacted her in mid-December, claiming that "he had a settlement coming."   She claimed that she was unable to meet with Fleischer that day and that she scheduled an appointment to meet the following day.  She alleged that Fleischer acted suspiciously at that meeting and that "his behavior was of a demeanor he had not displayed before." Rosier claimed that Fleischer "tried to convince [her] that the meeting was about the [landlord-tenant] case and not the Wasselle case," but that after she pressed him for information about her claims against Dr. Wasselle, Fleischer eventually provided Rosier with a one-page fax from Continental.  Rosier admitted that the fax did not contain confirmation of a settlement or settlement offer.  In her view, the fax "was just asking for baseless information."

In addition, Rosier testified that she spoke by phone to Jessica Roos, the claims specialist for Continental, Dr. Wasselle's insurer.  Rosier alleged that during the phone call, Roos told her that she had contacted Fleischer by mail.  From this admission, Rosier inferred that a settlement check had been mailed to Fleischer because "a check would go in the mail."   Rosier also alleged that Roos ended their phone call abruptly after she learned that she was speaking with Rosier.  From this, Rosier concluded that Roos was a party to the conspiracy to steal her settlement money.

Rosier testified that after she began to suspect that Fleischer had stolen a settlement, she began to receive phone calls from an incarcerated man named Jeffery Stansberry.  She testified about her belief that Fleischer had hired Stansberry to intimidate her and that the phone calls conveyed an "underlying message [that] if I didn't shut up about the theft of my money they had powerful political connections."  Rosier admitted that Stansberry did not mention Fleischer, Dr. Wasselle, or the settlement, or

threaten her in any way. Rather, she testified that Stansberry complained to her that the prison facility had attempted to force him to take medication against his will and asked her to contact his family and an attorney on his behalf. Rosier also testified that when she confronted Fleischer and asked whether he had hired Stansberry, Fleischer had replied, "Yeah, I did."

Rosier pointed to other circumstantial evidence and testified about her belief that Fleischer, or an individual acting on his behalf, had broken into her apartment and poisoned water in a medical device she used. She also accused Fleischer of stealing documents related to the alleged settlement with Dr. Wasselle.

"To establish a conversion claim, a plaintiff must prove that [she] had a possessory interest in the property, that the defendants intentionally interfered with the plaintiff's possession, and that the defendants' acts were the legal cause of the plaintiff's loss of property."[3] The trial court reasoned that Rosier could not prove a possessory interest in the settlement money because she failed to offer any evidence that a $750,000 settlement actually existed. Rosier's testimony at trial established that she believed a settlement was coming. But Rosier offered no evidence indicating that the proceeds of a $750,000 settlement had actually been sent to her attorney. Only her subjective belief and the inferences she drew supported any conclusion that Fleischer had actually received a settlement check in the amount of $750,000. In the context of opposition to a motion for summary judgment, we have held that "something more than 'unsupported assumptions and speculation' " is necessary to establish a genuine issue of material fact.[4]

_____

[3]     *K & K Recycling, Inc. v. Alaska Gold Co.*, 80 P.3d 702, 717 (Alaska 2003) (citing *Silvers v. Silvers*, 999 P.2d 786, 793 (Alaska 2000)).

[4]     *Mahan v. Arctic Catering, Inc.*, 133 P.3d 655, 661 (Alaska 2005) (quoting *French v. Jadon, Inc.*, 911 P.2d 20, 25 (Alaska 1996)) (holding in the employment (continued...)

We apply that reasoning here because "a mid-trial directed verdict motion is essentially a summary judgment motion made after the close of an opponent's case."[5]

No reasonable fact-finder could conclude from the demand letter and the written correspondence between Continental and Fleischer that a $750,000 settlement agreement actually existed or that a settlement check had been issued by Continental. Because the only evidence for the existence of a settlement are Rosier's statements about her own inferences and beliefs, and because those inferences relied on "unsupported assumptions and speculation,"[6] no reasonable person could conclude from Rosier's case-in-chief that Fleischer stole $750,000 in settlement proceeds from her. We therefore affirm the superior court's directed verdict as to Rosier's claim for conversion.

At trial Rosier also asserted a wide range of legal malpractice claims against Fleischer. She testified that Fleischer had stolen her settlement and engaged in erroneous billing; that Fleischer had prepared an inadequate draft contract for the production of an audition video for a television show on the Oprah Winfrey Network; that Fleischer had

---

[4] (...continued)
discrimination context that plaintiff's unsupported testimony regarding her perception that the stated reasons for her firing were pretextual was insufficient to create a genuine issue of material fact); *see also Christensen v. Alaska Sales & Serv., Inc.*, 335 P.3d 514, 520 (Alaska 2014) ("We require only that the evidence proposed for trial must not be based entirely on 'unsupported assumptions and speculation' . . . ." (quoting *Peterson v. State Dep't of Natural Res.*, 236 P.3d 355, 367 (Alaska 2010))).

[5]     *Cameron v. Chang-Craft*, 251 P.3d 1008, 1017 (Alaska 2011). *Compare Christensen*, 335 P.3d at 520 ("[S]ummary judgment is appropriate only when no reasonable person could discern a genuine factual dispute on a material issue."), *with Murray E. Gildersleeve Logging Co. v. N. Timber Corp.*, 670 P.2d 372, 377 (Alaska 1983) ("[A] directed verdict will be granted when reasonable jurors could not differ in their resolution of a disputed issue of fact.").

[6]     *See Mahan*, 133 P.3d at 661.

accepted a $3,000 retainer to represent her incarcerated nephew in a criminal matter and had "never [done] anything"; that Fleischer had failed to keep her apprised of proceedings in the lawsuit against her landlord; and that Fleischer had engaged in sham litigation in the dental malpractice case resolved in Dr. Wasselle's favor in order to cover up the theft of her settlement.

> In order to prevail on a legal malpractice theory, a plaintiff must prove four elements: "(1) the duty of the attorney to use such skill, prudence, and diligence as other members of the profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the [attorney's] negligence."[7]

Here, contrary to the superior court's suggestion, it is unclear that Rosier needed to support her claims with expert testimony in order to prevail. Although it is true that "[l]egal malpractice plaintiffs in Alaska must support their claims with expert opinion evidence unless the negligence alleged is sufficiently non-technical to be cognizable by laypersons,"[8] most of Rosier's claims were sufficiently non-technical to be cognizable by laypersons. For example, there is no need for expert testimony to establish that Fleischer's duty of skill, prudence, and diligence as an attorney would prohibit the theft of a client's settlement proceeds or fraudulent billing.

Nevertheless Rosier did not present sufficient evidence for a reasonable person to conclude that Fleischer had committed malpractice. For each allegation made at trial, there is either no evidence that Fleischer breached a duty or no evidence that

---

[7]    *Zok v. Collins*, 18 P.3d 39, 42 n.8 (Alaska 2001) (alteration in original) (quoting *Shaw v. State, Dep't of Admin., Pub. Defender Agency*, 816 P.2d 1358, 1361 n.5 (Alaska 1991)).

[8]    *Ball v. Birch, Horton, Bittner & Cherot*, 58 P.3d 481, 489 (Alaska 2002).

Rosier suffered a harm. Rosier failed to present sufficient evidence for a reasonable person to conclude that Fleischer stole settlement money. Thus Rosier's claim that the theft constituted malpractice fails. By extension, her claim that the litigation of the malpractice claim against Dr. Wasselle was a sham designed to hide the theft of a settlement also fails.

Rosier also offered no testimony explaining the ways in which Fleischer's billing was fraudulent. She testified that she repeatedly confronted Fleischer about his high fees, and she does not assert that she ever paid any charges she believed to be erroneous. Similarly, there is no indication that the allegedly inadequate proposed draft contract with the production company proximately caused any harm to Rosier. Although Rosier did not win a role in the television show on the Oprah Winfrey Network, she presented no evidence explaining why she needed the contract in order to make the audition tape, and she presented no evidence indicating that she would have been likely to win the role had Fleischer met her expectations. Regarding her incarcerated nephew, Rosier offered no testimony expressing her expectations for Fleischer's representation, and she acknowledged that Fleischer met twice with her nephew while he was incarcerated, as the State was getting ready to release him from prison. Moreover, any harm that may have accrued would have run to her nephew, and not to Rosier.

Finally, while Rosier asserts that Fleischer failed to maintain an appropriate degree of communication with regard to the landlord-tenant litigation, she failed to elaborate on this claim or to offer any testimony regarding any harm that accrued as a result of Fleischer's decisions or actions in the lawsuit. We therefore affirm the superior court's directed verdict because Rosier presented insufficient evidence in her

case-in-chief for a reasonable person to conclude that Fleischer committed legal malpractice.[9]

## V.    CONCLUSION

We AFFIRM the superior court's directed verdict against Rosier.

---

[9]    In her brief on appeal, Rosier also argued that Fleischer violated her "HIPPA rights." And she argues that the transcript of the trial court proceedings in her malpractice case against Fleischer is inaccurate. But Rosier fails to offer any evidence supporting her argument that the transcript is inaccurate and does not identify any specific errors. Cursorily briefed arguments devoid of factual support and citation to legal authority are considered abandoned. *See Childs v. Childs*, 310 P.3d 955, 962 n.29 (Alaska 2013). The HIPPA violation alleged on appeal is a new claim not raised in Rosier's complaint or argued below. We therefore do not consider it because it depends on new facts, is not closely related to Rosier's argument at trial, and could not have been gleaned from the pleadings. *See Arnett v. Baskous*, 856 P.2d 790, 791 n.1 (Alaska 1993).