Mark E. WRIGHT, Appellant,

v.

Tracy S. WRIGHT, Appellee.

No. S–9450.

Supreme Court of Alaska.

May 11, 2001.

Rehearing Denied June 21, 2001.

Mark E. Wright, pro se, Anchorage.

Peggy A. Roston, Law Office of Peggy A. Roston, Anchorage, and Mary A. Gilson, Assistant Attorney General, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

---

1. The parties' agreement did not comport with the requirements of the version of Alaska Rule of Civil Procedure 90.3 in effect in 1988, which required that the non-custodial parent pay thirty-six percent of adjusted annual income for four children. *See infra* note 17.

## OPINION

CARPENETI, Justice.

### I. INTRODUCTION

This child support dispute arises from Mark Wright's 1999 "Motion to Retroactively Modify Child Support," in which he asked the superior court to modify his obligation under a child support order that was in effect from June 1988 until May 1996. The superior court concluded that retroactive modification of his child support obligation was prohibited and that no grounds existed to set aside the 1988 order. We affirm.

### II. FACTS AND PROCEEDINGS

#### A. Background of the Wrights' Dissolution

In April 1988 Superior Court Judge Mary Greene signed the decree of dissolution of the marriage of Mark and Tracy Wright. Prior to the dissolution, Mark and Tracy had entered into a joint custody agreement in which they agreed that Mark would have primary physical custody of the parties' four children and Tracy would pay child support. The terms of the child support payments required that Tracy pay $10 per month per child or thirty-three percent of her net income if her annual income rose above $12,000.[1]

On June 6, 1988 the parties agreed to a modification of their dissolution decree based on Mark's imminent loss of employment with the Army and a pending move away from Alaska. On June 7 the superior court granted the request to modify the decree of dissolution. The modification granted primary physical custody of the children to Tracy. The dissolution decree appears to have incorporated the parties' custody agreement: Section 7 of the agreement, entitled "Other relief" states that "[a]mendment to the decree affords same conditions (to mother) of this document as she assumed physical custody on 10 July 1988." Reading the modification order and the dissolution decree together with the parties' custody agreement, it appears that the modification required Mark to

pay child support in accordance with the parties' original child custody agreement.

On June 7, 1988, the day after Tracy agreed to the modification of the dissolution decree, she applied for public assistance and assigned her rights to child support to the Child Support Enforcement Division (CSED). Mark was notified that his children were receiving public assistance and that the state would seek reimbursement from him. He was also advised that agreements between the parties to waive past or future child support would have no legal effect while the children received public assistance "unless ... specifically adopted as an administrative order by [CSED]."

On October 13, 1988 the state sought modification of the child support agreement. The state notes that although that motion was titled "Motion for Retroactive Modification of Child Support," it was actually a motion to set a specific dollar amount for Mark's child support obligation.[2] Mark was served with this motion but he did not file a response. The court entered an order on November 1 setting Mark's monthly support for the four children at $1,188, effective June 7, 1988. This amount was based on CSED's calculation of thirty-six percent of Mark's adjusted annual income of $39,601, as required by the version of Alaska Rule of Civil Procedure 90.3 in effect in 1988.

Mark did not appeal the order even though his impending release from the military resulted in a lower adjusted annual income than that used by CSED to calculate the child support obligation. However, following the entry of the order modifying child support, Mark did contact CSED on two occasions about the error in the support calculation. CSED informed Mark that once a court order had been entered, CSED could not initiate an action for reconsideration of support for twelve months. Mark was told that such an administrative action would require him to submit his financial information

to CSED. CSED also informed Mark that if he wanted the matter considered sooner he would have to "motion the court for a new hearing" to have the amount reconsidered.

On December 28, 1988 Mark filed a motion to modify his child support obligation. However, due to defects in the motion and the lack of service on either CSED or Tracy, the court rejected the motion and informed him what was required before the court could consider the motion. Mark did not follow up on the court's suggestions. Sometime after his discharge from the Army in December 1988, Mark moved to Ohio to attend college.

In October 1992 Mark filed another motion to modify child support, which was also defective. The superior court again informed Mark of the defects and what he needed to do to have the motion properly before the court. The superior court also suggested that he contact an attorney if he had any questions. Again, Mark did not act on the court's suggestions.

On October 2, 1992 Tracy wrote a notarized letter (directed to "To Whom It May Concern") stating that she released CSED from its obligation to collect child support because she had forgiven any arrearage or support owed. It is unclear who received this letter, although it appears that CSED may have received notice of it.

In 1996 CSED undertook a review of the child support order at Tracy's request. Notice of the review was sent to both Tracy and Mark. An order modifying child support was entered on January 30, 1997, effective May 1, 1996, which reduced Mark's child support obligation to $391 per month for four children, or $358 for three children.[3]

In December 1997 Mark, through counsel, filed a motion to modify child support, seeking to reduce his obligation to $50 per month. Litigation over numerous issues related to child support and custody ensued over the next year and a half, but Mark did not,

2. The parties' original agreement specified Tracy's child support obligation as a specific dollar amount, if she earned less than $12,000 annually, or as a percentage of her annual salary, if she earned more than $12,000. Because Mark earned more than $12,000 annually, his child support obligation under the agreement would

be a percentage of his annual salary, not a specific dollar amount.

3. In 1995 the parties' son, Patrick, was diagnosed with terminal cancer. Patrick passed away in June 1997.

during that time, file a motion regarding the arrears accrued under the 1988 order. A trial on custody was held in February 1999. The trial court found that it was in the best interest of the three remaining children to be in the sole legal custody of Tracy, with reasonable visitation awarded to Mark. The court concluded that child support was to be set in accordance with Rule 90.3, but it did not set the amount of support at that time.

### B. Proceedings at Issue in this Appeal

In July 1999 Mark filed a pro se "Motion for Retroactive Modification of Child Support" in which he argued that the 1988 order erroneously calculated his annual income and thus his child support obligation. Mark had accrued approximately $150,000 of unpaid support, interest, and penalties. He asked the superior court to recalculate his obligation for the time period in which the 1988 order was effective (June 7, 1988 through May 1, 1996), to reflect his actual earnings from that time period. CSED and Tracy opposed the motion arguing that retroactive modification of child support is prohibited under Rule 90.3(h) and federal law. They both adverted to the grounds provided in Alaska Rule of Civil Procedure 60(b) for setting aside court orders, even though this was not mentioned by Mark in his motion.[4]

Superior Court Judge John E. Reese denied Mark's motion on November 17, 1999, noting that retroactive modification of child support is prohibited under Rule 90.3(h) and finding that no grounds had been raised to support setting aside the order under Rule 60(b).

Mark appeals.

### III. STANDARD OF REVIEW

■ We review orders granting or denying modification of child support orders for abuse of discretion.[5] A trial court's denial of a Rule 60(b) motion will not be disturbed except upon a showing of abuse of discretion.[6] An abuse of discretion is found if we are "left with the definite and firm conviction on the whole record that a mistake has been made."[7]

### IV. DISCUSSION

#### A. The Superior Court Did Not Abuse Its Discretion by Concluding that Retroactive Modification of the 1988 Child Support Order Is Prohibited under Alaska Rule of Civil Procedure 90.3(h).

■ Mark argues that even though retroactive modification of child support arrears is precluded under federal and state law, the circumstances of this case warrant such action. He contends that the October 1988 order was itself a retroactive modification of a child support order because it modified the agreement that he and Tracy had made in March 1988. And he concludes that because modification is permitted for a period during which there is a pending motion for modification, his December 1988 motion suffices to keep alive his ability to modify the 1988 order.

CSED and Tracy[8] argue that Mark's motion was properly denied by virtue of the provisions of Rule 90.3(h) prohibiting retroactive modification of child support arrears.

Modification of a final child support award is allowed "upon a showing of a material change of circumstances."[9] Retroactive modification of a child support arrearage is prohibited.[10] However, modification of child support "is effective on or after the date that a notice for modification, or a notice of peti-

---

4. CSED also noted that it can, in some cases, settle child support debts that are owed to the state, for less than the stated arrears.

5. See State, Dep't of Revenue, Child Support Enforcement Div., ex rel. Husa v. Schofield, 993 P.2d 405, 407 (Alaska 1999); Robinson v. Robinson, 953 P.2d 880, 888 n. 4 (Alaska 1998).

6. See Stinson v. Holder, 996 P.2d 1238, 1242 (Alaska 2000).

7. Id.

8. Tracy incorporates and adopts the CSED brief.

9. Alaska R. Civ. P. 90.3(h)(1).

10. The only exception to the prohibition on retroactive modification occurs in disestablishment of paternity. See Alaska R. Civ. P. 90.3(h)(2); AS 25.27.166(d).

tion for modification by [CSED], is served on the opposing party." [11]

■ Rule 90.3 "provides a process that parents must follow in order to modify their statutory obligations." [12] We have made it clear that parties must strictly adhere to Rule 90.3's procedural requirements.[13] Even when CSED and the obligor agree that the child support obligation is incorrect, Civil Rule 90.3 prohibits retroactive modification of the obligation without a motion to modify child support.[14] The only documents that satisfy the requirements of Rule 90.3 are motions or petitions for modification; [15] these establish the date from which a modification can be made.[16]

■ The prohibition on retroactive modification of child support arrears precludes the possibility of modifying Mark's obligation under the 1988 order. First, the 1988 order was not an invalid retroactive modification of child support, as Mark contends. Although CSED's 1988 motion was entitled a "Motion for Retroactive Modification of Child Support," CSED sought to establish an exact dollar figure owed by Mark from the date public assistance was sought, based on the parties' own agreement to modify their dissolution decree. The 1988 order is not rendered invalid by bringing it into compliance with the requirements of Rule 90.3.[17]

■ Second, while Mark twice attempted to commence the process of modifying the 1988 child support order, he never successfully accomplished this. Even after explicit

direction by the court, he failed to correct the deficiencies in his motions. Without a valid motion before the court, a modification of child support would be retroactive and thus prohibited. Mark's accumulated debt cannot be changed at this stage through a motion to modify child support. The superior court did not abuse its discretion in denying Mark's motion.

**B. *The 1988 Child Support Obligation Cannot Be Varied under Rule 90.3(c)(1)(A).***

■ Mark briefly argues that the child support award should be varied under Rule 90.3(c)(1)(A) because of unusual circumstances.[18] This argument is meritless. Rule 90.3(c)(1) allows variance of child support in accordance with the other provisions of Rule 90.3. We decline to allow a retroactive variance while at the same time prohibiting retroactive modification of child support or arrears under Rule 90.3(h).

**C. *No Grounds Exist To Set Aside the 1988 Order under Rule 60(b).***

Under certain circumstances provided for in Rule 60, a party may seek relief from a judgment or order.[19] At issue here are the provisions of Rule 60(b)(1), which provide relief from a court order for mistake, inadvertence, surprise, or excusable neglect, and Rule 60(b)(6), which allows the same relief for "any other reason justifying relief from

---

11. Alaska R. Civ. P. 90.3(h)(2).

12. *Schofield,* 993 P.2d at 408.

13. *See id.*

14. *See id.*

15. *See id.*

16. Alaska R. Civ. P. 90.3(h)(2).

17. Former Alaska R. Civ. P. 90.3 (1988) provided:
    (a) Guidelines. A child support award in a case in which one parent is awarded sole or primary physical custody will be calculated as an amount equal to the adjusted annual income of the non-custodial parent multiplied by a percentage specified in subparagraph (a)(2).
    . . . .

(2) The percentage by which the non-custodial parent's adjusted income must be multiplied in order to calculate the child support award is:
    (A) 20% (.20) for one child;
    (B) 27% (.27) for two children;
    (C) 33% (.33) for three children; and
    (D) an extra 3% (.03) for each additional child.

18. Alaska R. Civ. P. 90.3(c) provides in part that:

(1) The court may vary the child support award as calculated under the other provisions of this rule for good cause.... Good cause may include a finding:
    (A) that unusual circumstances exist which require variation of the award.

19. Alaska R. Civ. P. 60.

the operation of the judgment."[20] Mark argues that the 1988 order should be set aside under Rule 60(b). Specifically, he contends that the mistake or neglect provisions of Rule 60(b)(1) are not applicable and that Rule 60(b)(6) should be used in this case to set aside the 1988 order because reasons exist to justify such relief. We disagree.

### 1. *Civil Rule 60(b)(1) applies.*

Mark seeks relief from the 1988 order under Rule 60(b)(6). But the reasons he sets forth for why he did not file a timely motion to modify convince us that subsection (b)(1) is applicable in this case. Relief may be granted under Rule 60(b)(1) where mistake, inadvertence, surprise, or excusable neglect exist.[21] In such a case, the court may "relieve a party ... from a final judgment [or] order."[22] However, this may only be done when a party has filed a motion for relief under Rule 60(b)(1) within one year from the date of the judgment or order from which relief is sought.[23]

Mark argues that the 1988 order should be set aside because of: his lack of understanding of the court process; his belief that CSED would do something to correct the calculation; his reliance on Tracy's statement that she would forgive the arrears and support obligation; and his feeling that instructions in the 1988 order regarding what needed to happen in the event of a financial change were vague. These reasons can only be classified under the provisions of subsection (b)(1). Mark's motion to set aside the 1988 order is therefore time-barred as a matter of law because he brought it eleven years after issuance of the order he sought to have set aside and modified retroactively.[24]

Although we have "allowed *pro se* litigants certain latitude ...," we have never relaxed the substantive requirements of Civil Rule 60(b) because of a litigant's *pro se* status."[25] Mark did attempt to file a motion to modify the 1988 order on two occasions and was given explicit instructions by the courts on how to remedy the defects in his motions. And CSED informed him as to the agency's inability to reconsider the court order until twelve months after issuance and that he needed to go to court if he wanted it considered sooner. Mark was on notice that his motions required additional action and his reasons for failure to act are based in mistake and neglect. The superior court did not abuse its discretion in finding no grounds to set aside the 1988 order under this rule.

### 2. *Civil Rule 60(b)(6) does not apply.*

We explained in *O'Link v. O'Link,* that "[c]lause 6 and the first five clauses of Rule 60(b) are mutually exclusive."[26] Even though clause six is a "catch-all" provision, "relief under clause six is not available unless the other clauses are inapplicable. The fact that relief under one of the first five clauses is time-barred does not render it allowable under clause six."[27] Because we conclude that Rule 60(b)(1) is applicable, relief under subsection (b)(6) is not available.[28]

## V. *CONCLUSION*

The superior court did not abuse its discretion when it denied Mark's motion to retroactively modify child support and no circumstances exist to set aside the 1988 order under Rule 60(b). The denial of Mark's motion to retroactively modify the 1988 child support order is therefore AFFIRMED.

---

**20.** Alaska R. Civ. P. 60(b)(1), (6).

**21.** Alaska R. Civ. P. 60(b)(1).

**22.** Alaska R. Civ. P. 60(b).

**23.** *Id.*

**24.** *See, e.g., Dixon v. Pouncy,* 979 P.2d 520, 525 (Alaska 1999).

**25.** *Ghete v. Anchorage,* 948 P.2d 973, 975–76 (Alaska 1997).

**26.** 632 P.2d 225, 229 (Alaska 1981).

**27.** *Williams v. Crawford,* 982 P.2d 250, 255 n. 16 (Alaska 1999) (citations omitted); *see also Dixon,* 979 P.2d at 526 n. 8; *Hartland v. Hartland,* 777 P.2d 636, 645 (Alaska 1989).

**28.** *See O'Link,* 632 P.2d at 229.