*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| DARCEY GELDERMANN, | ) | |
| | ) | Supreme Court Nos. S-16381/16401 |
| Appellant and | ) | |
| Cross-Appellee, | ) | Superior Court No. 3AN-10-12834 CI |
| | ) | |
| v. | ) | O P I N I O N |
| | ) | |
| MATTHEW GELDERMANN, | ) | No. 7281 – August 31, 2018 |
| | ) | |
| Appellee and | ) | |
| Cross-Appellant. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Patrick J. McKay, Judge.

Appearances: Allison Mendel and John J. Sherman, Mendel Colbert & Associates, Inc., Anchorage, for Appellant and Cross-Appellee. Rhonda F. Butterfield, Wyatt & Butterfield, LLC, Anchorage, for Appellee and Cross-Appellant.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

MAASSEN, Justice.

## I.    INTRODUCTION

The parents of a young son divorced in 2011, agreeing that the mother would have primary physical custody during the school year. The father moved to California. When the child began experiencing behavioral problems, the parents agreed to switch custody for a few years, giving the father primary physical custody in

California during the school year. The parties signed a custody modification agreement to this effect in December 2014, including both parents' waivers of child support, but they did not file the agreement in court.

The next year, following a dispute over the mother's visitation, both parties sought a judicial resolution of custody. The father went to a California court seeking to make the 2014 change in custody permanent. The mother went to Alaska superior court seeking to enforce the original 2011 agreement that gave her primary physical custody. The Alaska court asserted jurisdiction; it ultimately modified physical custody in favor of the father but maintained the parents' joint legal custody. The court also modified child support, ordering the mother to pay child support effective from the date the father first sought to modify custody in California.

The mother appeals the physical custody and child support orders, challenging among other things the child support order's effective date. The father cross-appeals, challenging the decision on joint legal custody. We affirm the court's custody and child support orders, concluding that they are well supported by the evidence and that the court did not abuse its discretion in selecting the child support order's effective date.

## II. FACTS AND PROCEEDINGS

### A. Facts

Darcey and Matthew Geldermann married in 2005 and had a son in 2008. They divorced in February 2011. The superior court approved a custody agreement that established joint legal custody but gave primary physical custody to Darcey, with Matthew receiving visitation during summers and holidays. Matthew thereafter moved to Washington, spent time as a contractor in Iraq, and eventually settled in California.

### 1. Custody experiment

The parties agree that their son exhibited behavioral problems when he started kindergarten in 2013; psychologists diagnosed him with autism, atypical attention deficit and hyperactivity disorder, unspecified anxiety disorder, and social communication disorder. To deal with these problems Darcey and Matthew agreed to try a temporary custody switch: their son would live primarily with Matthew in California for two and a half years and visit Darcey over summers and holidays. Around December 2014, when the child was six, the parties negotiated a new custody agreement that acknowledged the switch, but they did not formalize their new agreement in court.

The informal new arrangement worked well for about 10 months. The child started school in California in January 2015. Matthew hired a nanny and established a rigorous routine, including many extracurricular activities. The child had fewer behavioral problems, and his grades improved. Matthew claims that his son "thrived" under the new arrangement.

But the arrangement broke down in the fall of 2015 after a dispute over a planned visit by Darcey. The superior court found that the dispute generated "some angry emails," including threats by Darcey that she would retrieve the child from California and make it difficult for Matthew to see him again. The parties filed custody-related motions in both California and Alaska courts; meanwhile the child remained with Matthew in California.

While both cases were pending, the parties struggled to maintain civil communication with each other. The California court awarded Darcey a visit with her son in November 2015 when she was there for a hearing; the visit was not a success, though the parties disagree on why. In March 2016 Matthew moved the child to a new school following a bullying incident and failed to immediately inform Darcey of the change. In April the Alaska superior court, retaining jurisdiction, awarded Darcey

spring-break visitation, requiring only that she provide an itinerary. The parties disagreed about how specific the itinerary needed to be, and Darcey ultimately canceled her visit. The superior court described the "failure" of the spring break visit as "disturbing" and "highly unfortunate."

### 2. Child support

As part of their 2011 divorce, the parties' court-approved settlement agreement provided that Matthew would pay Darcey child support. But when their son moved in with Matthew in December 2014, "[t]he parties agree[d] that neither party [would] owe child support to the other party as a result." In January 2015, accordingly, Darcey withdrew from the collection services provided by Alaska's Child Support Services Division (CSSD). But when their current dispute arose, Darcey again requested CSSD assistance, and Matthew received a letter from CSSD in October 2015 directing that he pay Darcey the child support required by the 2011 agreement.

## B. Proceedings

### 1. Custody

In early October 2015 Matthew filed an ex parte custody action in California, seeking a transfer of jurisdiction from Alaska, a temporary emergency custody order, and a modification of custody to reflect the parties' 2014 agreement giving him primary physical custody. Shortly thereafter Darcey commenced the current Alaska proceedings; she filed a motion to enforce the original 2011 custody arrangement that gave her primary physical custody. The Alaska superior court conferred with the California court, held an evidentiary hearing on jurisdiction in January 2016, concluded that neither forum was convenient for both parties, and ultimately decided to retain jurisdiction in Alaska.

Matthew had not filed a motion in Alaska to modify custody. The superior court concluded, however, that his opposition to Darcey's motion to enforce the 2011

order amounted to, "at the very least, an implied custody modification request," and it scheduled a trial on both physical and legal custody. The parties presented a number of witnesses, including themselves, their respective new spouses, their son's California nanny, and Darcey's mother.

After hearing the evidence, the court denied Darcey's motion to enforce the 2011 order and awarded Matthew primary physical custody during the school year. Darcey was given summer vacations and alternating holidays as well as "generous and liberal, unrestricted, unsupervised visits with [the child], whenever she is in the same geographic location." Although the court found significant communication problems between Darcey and Matthew, it continued joint legal custody. Darcey sought reconsideration, claiming that custody modification was inappropriate absent a formal motion from Matthew. The court denied the motion, explaining that custody and visitation had been "always clearly at issue."

## 2. Child support

In October 2015 Darcey filed a motion to reduce to judgment past-due amounts of child support calculated under the 2011 order. In early December Matthew sought to stay enforcement of those child support provisions, and in January 2016 the court issued an order precluding collection of child support arrears from December 2014 until it ordered otherwise.

Matthew did not file any other documents related to child support until May 18, 2016, following the court's custody decision, when he filed a proposed child support order. He proposed an effective date of "November 1, 2015, which is the first of the month after [Darcey] was formally served with notice of [Matthew's] custody action in California." Darcey objected, arguing that Alaska Civil Rule 90.3(h)(2) prohibited a retroactive date because Matthew had never filed a motion to modify child support.

The court signed a new child support order on June 1, 2016, requiring Darcey to pay support to Matthew. The order used Matthew's proposed effective date of November 1, 2015. Darcey sought reconsideration, which was denied.

Both parties appealed. Darcey seeks review of the physical custody and child support orders, and Matthew challenges the award of joint legal custody.

## III. STANDARDS OF REVIEW

"Superior courts have broad discretion in child custody decisions, and we will reverse only if findings of fact are clearly erroneous or if the superior court abused its discretion."[1] "A factual finding is clearly erroneous when a review of the record leaves [us] with a definite and firm conviction that the superior court has made a mistake."[2] "An abuse of discretion exists where the superior court 'considered improper factors in making its custody determination, failed to consider statutorily mandated factors, or assigned disproportionate weight to particular factors while ignoring others.' "[3] "Additionally, an abuse of discretion exists if the superior court's decision denied a substantial right to or substantially prejudiced a party."[4]

"We review an award of child support for abuse of discretion."[5] But "[w]hether the superior court applied the correct legal standard to its child support

---

[1] *Riggs v. Coonradt*, 335 P.3d 1103, 1106 (Alaska 2014) (citing *Ronny M. v. Nanette H.*, 303 P.3d 392, 399 (Alaska 2013)).

[2] *Id.* (quoting *Ronny M.*, 303 P.3d at 399).

[3] *Id.* (quoting *Ronny M.*, 303 P.3d at 399).

[4] *Ronny M.*, 303 P.3d at 400 (citing *House v. House*, 779 P.2d 1204, 1206 (Alaska 1989)).

[5] *Limeres v. Limeres*, 320 P.3d 291, 295 (Alaska 2014) (citing *Swaney v. Granger*, 297 P.3d 132, 136 (Alaska 2013)).

determination is a question of law that we review de novo."[6]  Finally, "[t]he adequacy of the notice and hearing afforded a litigant in child custody proceedings involves due process considerations," which we also review de novo.[7]

## IV.  DISCUSSION

### A.  The Superior Court Did Not Abuse Its Discretion By Finding A Substantial Change In Circumstances For Purposes Of Modifying Physical Custody.

"Alaska Statute 25.20.110 authorizes courts to modify child-custody and visitation awards if (1) there has been a change in circumstances that justifies modification and (2) the modification is in the best interests of the child."[8]  "Once the movant meets [the initial] burden [of changed circumstances], he or she is entitled 'to a hearing to consider whether, in light of such changed circumstances, it is in the child's best interests to alter the existing custodial arrangement.' "[9]

Darcey challenges only the court's decision on the first element of the modification test:  that there was a change in circumstances substantial enough to justify a modification of custody.  We have held that "[a] change in circumstances is unlikely to be substantial enough to 'overcome our deep reluctance to shuttle children back and forth between parents' unless the change affects the children's welfare and 'reflect[s]

---

[6]     *Id.* (citing *Koller v. Reft*, 71 P.3d 800, 804 (Alaska 2003)).

[7]     *Lashbrook v. Lashbrook*, 957 P.2d 326, 328 (Alaska 1998).

[8]     *Rego v. Rego*, 259 P.3d 447, 452 (Alaska 2011) (citing *Melendrez v. Melendrez*, 143 P.3d 957, 962 (Alaska 2006)).

[9]     *Lashbrook*, 957 P.2d at 329 (quoting *A.H. v. W.P.*, 896 P.2d 240, 244 (Alaska 1995)).

more than mere passage of time.' "[10] Whether changed circumstances justify modification "is heavily fact-intensive" and "appropriately gauged by its effect on the child."[11] "The change in circumstances 'must be demonstrated relative to the facts and circumstances that existed at the time of the prior custody order that the party seeks to modify.' "[12]

The superior court in this case had to decide whether circumstances had substantially changed since the first custody agreement in 2011.[13] In deciding that they had, the court relied on the change that prompted Darcey and Matthew to shift custody in 2014: "[T]here ha[s] been a change in circumstances . . . that was recognized by the parties when they agreed that [the child] would reside, at least temporarily, with his father." It is undisputed that the child had behavioral problems in Alaska, and both parties agreed it would benefit him to live with Matthew in California for several years. Matthew had also had a change in employment that allowed for a more permanent residence, and both parents had remarried. The superior court did not abuse its discretion

---

[10] *Collier v. Harris*, 377 P.3d 15, 22 (Alaska 2016) (second alteration in original) (quoting *Hope P. v. Flynn G.*, 355 P.3d 559, 565 (Alaska 2015)).

[11] *Id.* at 22, 23 n.31.

[12] *Nelson v. Nelson*, 263 P.3d 49, 52 (Alaska 2011) (quoting *Peterson v. Swarthout*, 214 P.3d 332, 341 (Alaska 2009)).

[13] The 2014 agreement was not filed with the Alaska court until the current litigation, so our baseline for assessing change is the court-approved 2011 parenting agreement. *See McClain v. McClain*, 716 P.2d 381, 385 (Alaska 1986) ("Trial courts, not parents, are the ultimate decision makers as to custody and are not bound by private agreements.").

in concluding that these new circumstances, in combination, amounted to a substantial change.[14]

Citing *McLane v. Paul*,[15] Darcey argues that, as a matter of law, her temporary agreement with Matthew should not qualify as a substantial change in circumstances because "parties should be allowed to experiment with new custodial arrangements without the fear that they will automatically become permanent." But the superior court did not point to the "new custodial arrangement" as the substantial change; rather, the court relied on the underlying circumstances that *prompted* the new custodial arrangement. The fact that the parties themselves recognize the substantiality of a change in circumstances and agree tentatively on how to deal with it cannot foreclose the court from recognizing the same thing.

**B.     The Superior Court Did Not Violate Darcey's Due Process Rights By Considering A Modification of Custody Without A Formal Motion From Either Party.**

Darcey argues that Matthew's failure to file a motion to modify custody in Alaska prevented her from understanding "what the alleged change in circumstances was," thus violating her due process rights to notice and a hearing. "Procedural due process under the Alaska Constitution requires 'notice and opportunity for hearing

---

[14]     *See Heather W. v. Rudy R.*, 274 P.3d 478, 482 (Alaska 2012) ("When reviewing whether a trial court was justified in finding a change in circumstances, we do not parse each alleged factual assertion of change, but instead look to see whether the circumstances in the aggregate establish a change of circumstances.")*; Hunter v. Conwell*, 219 P.3d 191, 197 (Alaska 2009) ("[T]he allegation that the boys have exhibited significant anger and behavioral issues after returning from Conwell's home[, among other things], could warrant modification of custody.").

[15]     189 P.3d 1039, 1044-45 (Alaska 2008) (holding that temporary agreement to allow child to stay with her father for one school year did not qualify as substantial change).

appropriate to the nature of the case.' "[16]  "To comply with due process, notice must be given sufficiently in advance of scheduled court proceedings so that the parties have a reasonable opportunity to prepare."[17]  We have explained that "[i]t is essential to contested custody proceedings that the parties be afforded a hearing which grants them the opportunity to present the quantum of evidence needed to make an informed and principled determination."[18]  But we have held that even without a formal motion from either party, "the trial court may decide [custody] issues on its own motion, as long as a party has raised them and both sides have the opportunity to present full testimony."[19]

Darcey argues that in the absence of a formal motion to modify custody, she "lacked notice as to the disputed issues and therefore had no ability to prepare to respond to Matthew's case."  Darcey acknowledges that she received "late notice" at the trial call that modification was at issue, but she argues that because she was unrepresented, the absence of a formal motion "deprived her of any understanding of the issues to be addressed at trial, or the case Matthew intended to present against her retaining custody."

We have found due process violations in several cases when a parent lacked notice that permanent custody was at issue or the hearing was insufficient to determine

---

[16]    *Lashbrook v. Lashbrook*, 957 P.2d 326, 328 (Alaska 1998) (quoting *Wright v. Black*, 856 P.2d 477, 480 (Alaska 1993)).

[17]    *Childs v. Childs*, 310 P.3d 955, 960 (Alaska 2013) (citing *Fidler v. Fidler*, 296 P.3d 11, 13 n.5 (Alaska 2013)).

[18]    *Lashbrook*, 957 P.2d at 328 (quoting *Cushing v. Painter*, 666 P.2d 1044, 1046 (Alaska 1983)).

[19]    *T.M.C. v. S.A.C.*, 858 P.2d 315, 318-19 (Alaska 1993).  Because "the two prongs of the [custody modification] test are sufficiently interwoven," the court has authority "to act on [its] own motion" regarding either a substantial change in circumstances or the subsequent best interests determination.  *Id.* at 319.

the child's best interests.[20] In *Siekawitch v. Siekawitch*, on the other hand, we rejected a father's due process claim because of his actual "notice that [the mother] sought equal time with the children."[21] Although the mother had not filed a motion to modify physical custody, she had sought equal time through a change in visitation "in her memorandum in support of her motion for a specific custody schedule, in her reply to [the father's] opposition to the motion, and in her proposed visitation order."[22] Because the father's pretrial motions and his conduct at trial indicated that he "was aware of [the mother's] intentions" to seek equal time, we concluded that the father had sufficient notice of a possible modification to satisfy due process.[23]

Darcey's case is not meaningfully distinguishable from *Siekawitch*. First, Matthew's filings and the court's comments clearly indicated that custody modification

---

[20] *Debra P. v. Laurence S.*, 309 P.3d 1258, 1261 (Alaska 2013) (finding due process violation where superior court based its custody decision on "hearing [that] would decide issues of interim custody" and had told parties "that another final hearing [on permanent custody] would be scheduled if the parties were unable to reach a settlement"); *Potter v. Potter*, 55 P.3d 726, 728-29 (Alaska 2002) (holding due process was violated where father "was given no notice that modification of decreed visitation was at issue — indeed, based on the court's rulings, both parties reasonably expected that decreed visitation would not be at issue"); *Lashbrook*, 957 P.2d at 329-30 (remanding custody determination where trial court relied on previous domestic violence hearing in determining custody rather than holding hearing to address the "eight other factors specified in AS 25.24.150(c)"); *Cushing*, 666 P.2d at 1046 (finding due process violation where mother only received five days notice and "because of the time constraints imposed, the parties were limited to four witnesses apiece").

[21] 956 P.2d 447, 450 (Alaska 1998).

[22] *Id.*

[23] *Id.*; *see also Easley v. Easley*, 394 P.3d 517, 521 (Alaska 2017) ("Because of the previous back-and-forth between the parties on the issue of enforcement of the divorce decree, [the former husband] lacked neither notice of [the former wife's] desire to be paid her share of the estate nor an opportunity to oppose her arguments.").

was at issue.[24] Although Matthew did not file a motion to modify custody in Alaska, he did file one in California, served on Darcey on October 8, 2015. And Matthew's motion to transfer jurisdiction, filed two weeks later in Alaska, clearly conveyed his intent to modify custody in whichever state took jurisdiction. His January 14, 2016 reply on the jurisdiction issue also discussed which state should "hear the custody modification action."

The superior court's interactions with Darcey clearly indicated its intent to consider modifying custody. When the court decided to retain jurisdiction in January 2015, it stated that modification would be the subject of a future evidentiary hearing and asked the parties when they would be ready for it. At trial call, 15 days before the evidentiary hearing, the court clearly stated that physical and legal custody were at issue.[25] And at the beginning of the hearing the court again stated that the "hearing [was] on custody modification."

Finally, the record supports a conclusion that Darcey understood from the outset that Matthew was seeking to modify custody.[26] She acknowledged that she knew Matthew was attempting to modify custody in California when she sought the protection of Alaska's courts: "Matthew . . . is trying to modify custody in California. He filed our Alaska custody order in the court of Orange County and is trying to modify it through

---

[24]  *See Siekawitch*, 956 P.2d at 450.

[25]  Darcey pointed out that Matthew had not filed a motion to modify custody, and the superior court noted that "there's an opposition to your motion to enforce which is at the very least an implied custody modification." There is no written opposition to Darcey's motion to enforce the 2011 custody order, as Matthew concedes. But his other filings clearly indicated his opposing position.

[26]  *See Siekawitch*, 956 P.2d at 450 ("[T]he record discloses that [the father] was aware of [the mother's] intentions; in his opposition to [the mother's] motion, he expressly acknowledged that [she] sought to share physical custody equally with him.").

the State of California and not Alaska." When the court advised her at the trial call to "be prepared for the court to rule on who should have physical and legal custody, okay?," Darcey responded "Okay." Her trial brief, filed the day before trial, addressed "Custody Modification/Enforcement," argued that "[t]here should be no modification of custody granted, and only enforcement of the existing order," and addressed the statutory best interests factors. We conclude that the superior court did not err in concluding that Darcey had sufficient notice of a possible custody modification.[27]

Darcey also had a sufficient opportunity to be heard; the hearing enabled the superior court to make a principled custody decision.[28] Both parties presented evidence on the best interests factors. Darcey's witnesses addressed her ability to care for the child and contrasted it with Matthew's. She cross-examined Matthew about their relative abilities to foster their son's relationship with the other parent, Matthew's home environment, and his relationship with his family. She does not point to any additional evidence she would have presented if she had received earlier or more specific notice.

---

[27] *See id.*; *see also Childs v. Childs*, 310 P.3d 955, 961 (Alaska 2013) (holding due process was not violated in a child support proceeding where father received notice in October, "had an opportunity to make his legal arguments and submit relevant financial documents," and the superior court did not issue final custody order until the following February); *Rebecca L. v. Martin C.*, No. S-14509, 2013 WL 1092714, at *3-4 (Alaska Mar. 13, 2013) (concluding that eight days' notice satisfied due process where "the parties had agreed years earlier" that they would revisit custody around that time, "they had been negotiating a custody modification for over a year by the time of the hearing," mother had notice permanent custody was at issue, parents and court wanted resolution before school started in the fall, and mother "was able to present sufficient evidence allowing the superior court to make a determination and the record does not reflect minimal preparation").

[28] *See Lashbrook v. Lashbrook*, 957 P.2d 326, 328 (Alaska 1998) (quoting *Cushing v. Painter*, 666 P.2d 1044, 1046 (Alaska 1983)).

Even taking Darcey's self-represented status into account, we conclude that her due process rights were not violated.[29]

**C.    It Was Not Error To Select November 1, 2015, As The Effective Date Of The Modified Child Support Award.**

We have observed that "a significant modification of the physical custody schedule is likely to require a new child support determination, regardless of whether a parent requests it."[30]  But whether a parent requested the modification *is* relevant to whether the new order can have anything but prospective effect.  Although Alaska Civil Rule 90.3(h)(2) prohibits most retroactive modifications of "[c]hild support arrearage," the rule further provides that a modification may be made effective "on or after the date that a motion for modification . . . is served on the opposing party."[31]  Darcey points out

---

[29]    Darcey relies heavily on *VinZant v. Elam*, in which we concluded that a show-cause hearing on a motion to enforce custody was insufficient under due process to allow a modification of custody.  977 P.2d 84, 86-87 (Alaska 1999).  But unlike in *VinZant*, the parties here had notice and an opportunity to address the best interests factors.  *See id.* at 87.

[30]    *Wells v. Barile*, 358 P.3d 583, 589 (Alaska 2015) (observing that court's entry of a tentative child support order reflecting ordered change in custody "was plainly the proper course" even though party moving for modification of custody had not requested change in support); *see Swaney v. Granger*, 297 P.3d 132, 137 n.15 (Alaska 2013) ("We note that under Rule 90.3(a) the change of a child's primary physical custodian from one parent to the other ordinarily will require modification of an existing support order."); *Potter v. Potter*, 55 P.3d 726, 729 (Alaska 2002) ("Ordinarily, when parties informally agree to make a change in decreed custody or visitation that is not merely temporary or experimental, the change should be reflected both in a changed custody or visitation order and in a changed child support order.").

[31]    The full text of Rule 90.3(h)(2) is as follows:

*No Retroactive Modification.*  Child support arrearage may not be modified retroactively, except as allowed by

(continued...)

that Matthew never filed a motion to modify child support, and she argues that the superior court violated the retroactivity bar when it modified child support effective November 1, 2015, the first day of the month after Matthew filed his motion for modification of custody in California.

In light of the purposes of Rule 90.3(h)(2) and the realities of custody litigation, we reject Darcey's argument. We conclude that when, as here, a parent moves to modify custody based on an existing, de facto custody change, the prohibition on retroactivity does not bar the superior court from making a corresponding change in child support effective from the date the modification motion is served on the opposing party.

A baseline principle is that child support calculations "must be based on the custody actually ordered, not exercised."[32] We explained in *Turinsky v. Long* that "[i]f the parties do not follow the custody order, they should ask the court to enforce the custody order or should move to modify the child support order."[33] Although modified child support may be calculated from the date a motion to modify child support is served on the opposing party, "[w]e have read Rule 90.3(h)(2) to prohibit increases or decreases in child support effective before" that date.[34] Superior courts have discretion to choose a later date, but "the motion service date" is the earliest available date and "should be the

---

[31]
(...continued)
AS 25.27.166(d) [where paternity is disestablished]. A modification which is effective on or after the date that a motion for modification, or a notice of petition for modification by the Child Support Services Division, is served on the opposing party is not considered a retroactive modification.

[32]
*Turinsky v. Long*, 910 P.2d 590, 598 (Alaska 1996).

[33]
*Id.* at 595.

[34]
*Boone v. Boone*, 960 P.2d 579, 585 (Alaska 1998).

preferred effective date."[35]   "[T]he superior court should exercise its discretion in selecting a different effective date only if it finds good cause for doing so."[36]

We recognize that our case law has not been entirely consistent on the issue of what "motion for modification" can be used to satisfy Rule 90.3(h)(2). We have not allowed the "functional equivalent" of a modification motion to determine the effective date of a support order.[37] In *Millette v. Millette* we held that the earliest date the court could use for a modification of child support was the date the father received notice of the mother's motion for modification of child support, which was months after the superior court had ordered a temporary change in custody; we noted that neither the court's custody order nor the mother's motion seeking modification of custody mentioned child support.[38] We explained that a formal motion to modify child support was required "even where the circumstances have materially changed and a modification

---

[35] *Id.*

[36] *Id.*

[37] *See Millette v. Millette*, 177 P.3d 258, 266 (Alaska 2008) ("We have held that '[w]ithout a valid motion before the court, a modification of child support would be retroactive and thus prohibited.' This is true even where the circumstances have materially changed and a modification would likely be permitted upon motion." (footnote omitted) (alteration in original) (quoting *Wright v. Wright*, 22 P.3d 875, 879 (Alaska 2001))); *Wright*, 22 P.3d at 879 ("The only documents that satisfy the requirements of Rule 90.3 are motions or petitions for modification."); *State, Dep't of Revenue, Child Support Enf't Div., ex rel. Husa v. Schofield*, 993 P.2d 405, 409 (Alaska 1999) ("[W]e specifically rejected the idea that documents not mentioned in the text of the rule can be the 'functional equivalent' of a motion or petition to modify."); *Boone v. Gipson*, 920 P.2d 746, 749-51 (Alaska 1996) (explaining that because Rule 90.3(h)(2) "contains no indication that 'functional equivalents' of motions for modification . . . suffice, we conclude that nothing short of a motion or petition for modification satisfies the requirement").

[38] *Millette*, 177 P.3d at 266.

would likely be permitted upon motion."[39] "In such cases, the burden remains on the non-custodial parent to file a motion for modification of child support."[40] We have further observed that "allowing the court to alter [a parent's] obligation absent the filing of a motion for modification would undermine Rule 90.3's stated goal of ensuring predictability in determining the amount of child support to be paid."[41]

On the other hand, we recently indicated that a modification of child support could be effective as of the date of the mother's motion to modify custody where, as in *Millette*, the motion was silent on child support.[42] But because the father in that case "concede[d] that [the mother's] motion to modify custody satisfied the [retroactivity] provision of Alaska R. Civ. P. 90.3(h)(2)," it was unnecessary for us to decide whether Rule 90.3(h)(2) was actually satisfied.[43]

Harmonizing these cases requires us to again look at the purposes behind the retroactivity bar. Rule 90.3(h)(2) restates the federal prohibition of retroactivity found in the Bradley Amendment, which "specifies what laws a state must have in order to receive federal funds" for child support enforcement activities.[44] Among the Bradley

---

[39] *Id.*

[40] *Id.*

[41] *Schofield*, 993 P.2d at 408.

[42] *Swaney v. Granger*, 297 P.3d 132, 136-37 (Alaska 2013).

[43] *Id.* at 137 n.15. Nevertheless we "note[d] that under Rule 90.3(a) the change of a child's primary physical custodian from one parent to the other ordinarily will require modification of an existing support order." *Id.*

[44] *Karpuleon v. Karpuleon*, 881 P.2d 318, 320 n.6 (Alaska 1994); *see also* Alaska R. Civ. P. 90.3 cmt. X.B (explaining that Rule 90.3(h)(3) "is intended to restate [the Bradley Amendment's] prohibition"). The Bradley Amendment is shorthand for
(continued...)

Amendment's requirements is that states have procedures ensuring that child support payments not be "subject to retroactive modification . . . except that such procedures may permit modification with respect to any period during which there is pending a petition for modification, but only from the date that notice of such petition has been given . . . to the obligee or (where the obligee is the petitioner) to the obligor."[45] Discussing the policy reasons behind the federal retroactivity bar in *Karpuleon v. Karpuleon*, we noted commentators' concerns that evidence was sometimes not "easily attained or available" to support retrospective arguments about changed circumstances and that obligor parents should be required to act diligently when petitioning for reductions in their child support payments.[46]

The United States Department of Health and Human Services (DHHS), responding to comments on the Bradley Amendment's implementation, repeatedly emphasized that it is the obligation of the non-custodial parent — who "is in the best position to know of a change in circumstances" — "to take action promptly to seek modification of a support obligation."[47] Changed circumstances that trigger the obligor's responsibility to act "might include" the fact that "the child [has gone] to live with the

---

[44] (...continued)
Section 9103(a) of the Omnibus Budget Reconciliation Act of 1986, 42 U.S.C. § 666(a)(9) (2012).

[45] 42 U.S.C. § 666(a)(9)(C).

[46] *Karpuleon*, 881 P.2d at 321 (quoting Prohibition of Retroactive Modification of Child Support Arrearages, 54 Fed. Reg. 15,757, 15,758 (Apr. 19, 1989)).

[47] Prohibition of Retroactive Modification of Child Support Arrearages, 54 Fed. Reg. at 15,761.

obligor."[48]  As relevant here, DHHS reiterated:  "We do not . . . believe that . . . even a change of actual custody of the child should result in a modification of support liability unless the court or administrative authority is duly notified and sanctions such modification."[49]  And the required notice is the formal notice required by state jurisdictional rules:

> We believe Congress intended that "date of notice" or "date notice is given" should be construed literally and in terms of acquiring personal jurisdiction over the other party.  State law provides rules to determine when personal jurisdiction is acquired by service of notice of an action.  Under these provisions, the "date of notice" or "date notice is given" should be interpreted by the State in the same way as it is generally applied to commence other civil litigation within the State.  State law regarding the establishment of the date of notice that a petition has been filed dictates when the modification may be effective.[50]

The federal agency comments do not interpret the Bradley Amendment as dictating the title, form, or substance of the "motion for modification" necessary to satisfy the retroactivity bar.  They focus primarily on the importance of two factors: (1) notice that child support is at issue, and (2) that the notice be formal — that is, that it involve the court.  In our view, a motion for modification of custody based on an existing, de facto change in physical custody will usually provide the other parent the same "fair warning that support may change" as the parent would receive from an

---

[48]  *Id.*

[49]  *Id.*

[50]  *Id.* at 15,763.

explicit motion to modify child support.[51]  The requirements of federal law — focusing on notice and formal process — remain satisfied if the superior court has the flexibility to choose the date of that custody motion as the effective date for a modification of child support.[52]

In this case, Matthew filed an ex parte custody action in California in early October 2015 that sought, among other things, a modification of custody to reflect the parties' 2014 agreement giving him primary physical custody.  Darcey acknowledges that Matthew informed her in late September that he was taking this action, and he later filed in Alaska a California "Proof of Personal Service" that showed she had been served

---

[51]  *See Boone v. Boone*, 960 P.2d 579, 585-86 (Alaska 1998) ("[S]ervice of the motion [to modify child support] gives the opposing party both fair warning that support may change and an opportunity to reassess, even before the court rules, the correct amount of support.  This gives an opportunity to adjust consumption patterns in anticipation of modification, and thus minimize prejudice when relief is granted effective as of the service date.").

[52]  We overrule *Millette v. Millette*, 177 P.3d 258, 266 (Alaska 2008), to the extent it would require an explicit request for a change in child support to be included in a motion for a change of custody before that motion could be used in setting the effective date for child support.  Other cases that have applied the "no functional equivalents" principle are distinguishable as not involving either modifications of custody or the formal invocation of judicial process that we require here.  In *Wright v. Wright*, 22 P.3d 875, 879 (Alaska 2001), the father filed motions to modify child support but they were rejected as defective; we held that "[w]ithout a valid motion before the court, a modification of child support would be retroactive and thus prohibited."  In *State, Dep't of Revenue, Child Support Enf't Div., ex. rel Husa v. Schofield*, 993 P.2d 405, 407-09 (Alaska 1999), the father sought a retroactive change in child support based on CSED's implicit agreement that the existing order was erroneous, but "neither CSED nor [the parent had] filed or served a motion for modification."  In *Boone v. Gipson*, 920 P.2d 746, 749-51 (Alaska 1996), the mother sought a retroactive change in child support based on letters from CSED informing the father that it was reviewing his child support; we held that the earliest document that satisfied Rule 90.3(h)(2) was a formal motion to modify child support.

with the pleadings on October 8, 2015. At that time the child was already living with Matthew, and Darcey acknowledges she had actual notice of Matthew's intent to formalize their de facto custody arrangement by seeking to modify custody in California.

We conclude that the superior court did not abuse its discretion when it selected November 1, 2015 — the first date of the month immediately following the filing of the California custody action — as the effective date of the new child support order.

### D.  The Superior Court Did Not Abuse Its Discretion By Continuing Joint Legal Custody.

Matthew argues in his cross-appeal that the superior court erred by refusing to modify joint legal custody despite its finding — and both parties' testimony — that their communication had broken down. We conclude that this was not an abuse of discretion.[53]

"Joint legal custody is preferred"[54] but "is only appropriate when the parents can cooperate and communicate in the child's best interest."[55] Thus, "the test for

---

[53] Like modifications to physical custody, modifications to legal custody require a two-prong analysis. *Rego v. Rego*, 259 P.3d 447, 452 (Alaska 2011) ("Alaska Statute 25.20.110 authorizes courts to modify child-custody and visitation awards if (1) there has been a change in circumstances that justifies modification and (2) the modification is in the best interests of the child.").

[54] *Jaymot v. Skillings-Donat*, 216 P.3d 534, 540 (Alaska 2009) (citing *Farrell v. Farrell*, 819 P.2d 896, 899 (Alaska 1991)); *Peterson v. Swarthout*, 214 P.3d 332, 336 n.6 (Alaska 2009) (citing *Bell v. Bell*, 794 P.2d 97, 99 (Alaska 1990)).

[55] *Jaymot*, 216 P.3d at 540 (quoting *Farrell*, 819 P.2d at 899).

evaluating the propriety of joint legal custody is whether or not the parties can cooperate and communicate regarding the children."[56]

Here, the superior court acknowledged "concerns about the parties' ability to communicate" but also found that Darcey and Matthew had communicated "somewhat effectively" before the current issues arose in the fall of 2015. The court discussed its "hope that the parties will be able to communicate again, once the current issues are resolved."[57] We conclude that it was not manifestly unreasonable under the circumstances for the court to base its decision on that hope, grounded in turn in its direct experience with the parties.[58]

## V. CONCLUSION

We AFFIRM the superior court's custody and child support orders.

---

[56] *Farrell*, 819 P.2d at 900; *see also Jaymot*, 216 P.3d at 540 (quoting *Farrell*, 819 P.2d at 899); *Littleton v. Banks*, 192 P.3d 154, 161 (Alaska 2008) ("[J]oint legal custody depends in large part on the ability of the parents to communicate.").

[57] *See Collier v. Harris*, 377 P.3d 15, 21 (Alaska 2016) (affirming a superior court's decision not to modify legal custody where "the parties' ability to communicate, though not ideal, was not unusual in the circumstances and was adequate to support continued joint decision-making").

[58] Matthew also argues on his cross appeal that the superior court clearly erred by finding that Darcey was "currently divorcing" her husband. The superior court made a supplemental finding on this issue later, and we need not address it.