NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

|  |  |  |
|---|---|---|
| KENDALL BRIAN BECKWITH, | ) | |
| | ) | Supreme Court No. S-17830 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-16-08172 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| ASHLEIGH ALLYNE HELM, f/k/a | ) | AND JUDGMENT* |
| Ashleigh Allyne Beckwith, | ) | |
| | ) | No. 1834 – June 23, 2021 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Andrew Guidi, Judge.

Appearances: G.R. Eschbacher, Eschbacher & Eschbacher, Anchorage, for Appellant. Notice of nonparticipation filed by Ashleigh Allyne Helm, pro se, Appellee.

Before: Bolger, Chief Justice, Winfree, Maassen, and Borghesan, Justices. [Carney, Justice, not participating.]

## I.    INTRODUCTION

The parents of two children dissolved their marriage in 2016. The superior court incorporated the couple's parenting plan into its custody order, awarding physical and legal custody to the mother while the father had four hours of supervised visitation per week. The parents eventually increased the father's visitation time by informal agreement.

---

\*    Entered under Alaska Appellate Rule 214.

In 2019 the father filed a motion to modify custody, contending that his living situation had significantly improved since the dissolution and that he was now fully capable of sharing physical custody. The superior court denied the motion without a hearing, concluding that circumstances had not significantly changed since the parents' most recent informal modification of custody.

The father appeals. He contends that whether there was a substantial change in circumstances should have been measured from the original 2016 custody order, not the parties' informal modifications of it; he also contends that he was entitled to an evidentiary hearing on whether custody should be modified. We agree and therefore vacate the order denying an evidentiary hearing.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

Kendall Beckwith and Ashleigh Helm[1] were married in 2014 and became the parents of twins in 2016. The same year they filed jointly to dissolve their marriage. They reached an agreement on custody: Ashleigh would have both physical and legal custody of the children while Kendall would have four hours of supervised visitation every Saturday. The court incorporated this arrangement into an October 2016 custody order.

Kendall and Ashleigh dispute the extent to which Kendall then continued to engage with the children; Kendall asserted that he visited the children at his mother's house "every weekend that they were in town and didn't have prior plans," but according to Ashleigh, Kendall had only "minimal contact" with them for the first year or so following the dissolution.

---

[1]    Ashleigh took Kendall's last name during the marriage but changed her last name to Helm after remarrying in 2019.

In 2018 Kendall moved into the four-bedroom home of his girlfriend Jasmine. Ashleigh met Jasmine and approved of her as a visitation supervisor; Ashleigh said she "ha[d] the utmost respect for" Jasmine due to her "stable career, supportive family, and [being] an attentive mother to her two sons." From that time on Kendall engaged more consistently in visitation. In January 2019 he and Ashleigh agreed to increase his visitation from four to eight hours per week.

**B.    Proceedings**

Kendall filed a motion to modify custody in April 2019, requesting equal physical custody in the form of two-week rotations. Kendall explained that he had been consistently having eight-hour visits without third-party supervision, a significant advance from the original custody arrangement reflected in the 2017 order.

Ashleigh opposed Kendall's motion. She alleged that he had a serious drinking problem, as shown by a 2016 alcohol abuse assessment at Providence Hospital, and that "[s]ince the dissolution and custody order, [Kendall] has continued to drink excessively and has not sought treatment for his mental health or addictions." The superior court noted that the substance abuse issue was "central to the question of whether there has been a substantial change in circumstances" and ordered Kendall to "(a) admit or deny the [assessment] occurred and, assuming it did, (b) file a copy of his Providence records for the alleged visit." Kendall responded by admitting to the 2016 assessment and his failure to follow up with its recommendations. But he argued that his "life ha[d] substantial[ly] changed for the better" since then because of his "supportive relationship" and "solid home life" with Jasmine.

In July the court denied Kendall's motion to modify custody, concluding that he had failed to establish a significant change in circumstances and that the 2016 order's custody and visitation schedule would remain in effect.

By November 2019 Kendall had exercised visitation regularly for nearly a year and successfully completed a six-week parenting class, and Ashleigh agreed to try overnight visits. The new schedule apparently worked, and in May 2020 Ashleigh agreed to allow two consecutive overnight visits every other week in addition to a mid-week visit, beginning in June.

Kendall again moved to modify custody, arguing that an evidentiary hearing would show a substantial change in circumstances and that his proposed change — to equally shared physical custody — was in the children's best interests. He argued that the parents, "by their own actions, recognize[d] a change in circumstances" through their informal modifications to the 2017 schedule allowing him more visitation time. Kendall also relied on his completion of the parenting program and a new behavioral health assessment, which found that he did not meet the criteria for alcohol use disorder and which recommended no treatment.

Ashleigh's opposition argued that Kendall's new assessment "[did] not override a history of alcoholism, nor [did] it qualify as treatment," and that it just reflected Kendall "telling an assessor what he thinks will check a box to complete this task." She conceded that Kendall's care for the children had improved since 2019; however, she argued that these positive steps were outweighed by his alcohol abuse.

The court again denied Kendall's motion to modify custody. The court noted that the parents' informal agreement to increase visitation in May "creates an interesting legal issue. Arguably, it establishes a new custody and visitation 'baseline' for determining whether a substantial change in circumstances has occurred." The court agreed that Kendall's "willingness and desire to parent, as well as his capacity for it, appear[] to have improved considerably" since the 2016 custody order; however, the court determined that "no significant change ha[d] occurred since May 2020 when [Kendall's] visitation was expanded."

Kendall filed a motion for reconsideration, which was denied. Kendall filed this appeal.

## III.   STANDARD OF REVIEW

"We review de novo the denial of a motion to modify custody or visitation without a hearing."[2] " '[W]e take the moving party's allegations as true' to determine whether the moving party has demonstrated a sufficient change in circumstances to warrant a hearing."[3] "We will affirm a denial of a modification motion without a hearing 'if, in our independent judgment, the facts alleged, even if proved, cannot warrant modification, or if the allegations are so general or conclusory, and so convincingly refuted by competent evidence, as to create no genuine issue of material fact requiring a hearing.' "[4]

## IV.   DISCUSSION

### A.   The Correct Baseline For Determining Whether There Had Been A Substantial Change In Circumstances Was The Prior Custody Order, Not The Parties' Informal Modification Of It.

Kendall first contends that the superior court should have considered whether there was a substantial change in circumstances since the 2016 custody order, rather than using the parties' informal modifications to the schedule as its baseline. We agree.

"The change in circumstances 'must be demonstrated relative to the facts and circumstances that existed at the time of the prior custody order that the party seeks

---

[2]   *Fredrickson v. Hackett*, 407 P.3d 480, 482 (Alaska 2017) (alteration in original) (citing *Abby D. v. Sue Y.*, 378 P.3d 388, 391 (Alaska 2016)).

[3]   *Id.* (quoting *Abby D.*, 378 P.3d at 391).

[4]   *Bagby v. Bagby*, 250 P.3d 1127, 1128 (Alaska 2011) (quoting *Morino v. Swayman*, 970 P.2d 426, 428 (Alaska 1999)).

to modify.' "[5]  In *Geldermann v. Geldermann* we considered the modification of a 2011 order that approved a custody agreement by which the mother had primary physical custody.[6]  The child began exhibiting behavioral problems; to address them the parents agreed in 2014 to switch custody temporarily and have the child live for a time with his father in California.[7]  After this arrangement broke down and the parties again litigated custody, we observed that "[t]he superior court . . . had to decide whether circumstances had substantially changed since the first custody agreement in 2011."[8]  We explained: "The 2014 agreement was not filed with the Alaska court until the current litigation, so our baseline for assessing change is the court-approved 2011 parenting agreement."[9]  We have emphasized that "[c]ustodial parents should have the flexibility to experiment with new visitation schedules without fearing that every temporary change could be the basis for modifying visitation."[10]

---

[5]      *Nelson v. Nelson*, 263 P.3d 49, 52 (Alaska 2011) (quoting *Peterson v. Swarthout*, 214 P.3d 332, 341 (Alaska 2009)).

[6]      428 P.3d 477, 480 (Alaska 2018).

[7]      *Id.*

[8]      *Id.* at 482.

[9]      *Id.* at 482 n.13; *see also McClain v. McClain*, 716 P.2d 381, 385 (Alaska 1986) ("Trial courts, not parents, are the ultimate decision makers as to custody and are not bound by private agreements.").

[10]      *Morino v. Swayman*, 970 P.2d 426, 429 (Alaska 1999); *see also McLane v. Paul*, 189 P.3d 1039, 1043 (Alaska 2008) ("It is important to allow parents leeway to cooperate and experiment with custody.  Characterizing a short-term temporary and informal custody arrangement as a substantial change in circumstances could 'discourage parents from being generous with each other in custody matters and, to that extent, run[] counter to the goals of Alaska's family law and the needs of Alaska's children of divorce.' " (alteration in original) (quoting *Morino*, 970 P.2d at 433 (Fabe, J.,

In this case, thus, the baseline for determining whether there had been a substantial change in circumstances is the 2016 order. It was error for the superior court to consider only whether circumstances had changed significantly since May 2020 when the parties informally agreed to expand Kendall's visitation.

## B.    Kendall Was Entitled To A Custody Modification Hearing.

"Alaska Statute 25.20.110 authorizes courts to modify child-custody and visitation awards if (1) there has been a change in circumstances that justifies modification and (2) the modification is in the best interests of the child."[11] "Once the movant meets [the initial] burden [of establishing changed circumstances], he or she is entitled 'to a hearing to consider whether, in light of such changed circumstances, it is in the child's best interest to alter the existing custodial arrangement.' "[12]

Kendall argues that he demonstrated changed circumstances sufficient to entitle him to an evidentiary hearing. He contends that his ability to share custody of the children has improved significantly because "[s]ince the breakup four years ago, [he] has acquired a residential home, completed a behavioral health assessment, completed [a parenting program], and is employed and current in his child support." He argues that his situation is similar to that in *Fredrickson v. Hackett*, in which we held that the father was entitled to a hearing on his motion to modify custody when he alleged that he had gone from being "without a permanent home" to having a cabin which he "enlarged . . .

---

[10]    (...continued) dissenting))).

[11]    *Rego v. Rego*, 259 P.3d 447, 452 (Alaska 2011) (citing *Melendrez v. Melendrez*, 143 P.3d 957, 962 (Alaska 2006)).

[12]    *Lashbrook v. Lashbrook*, 957 P.2d 326, 329 (Alaska 1998) (quoting *A.H. v. W.P.*, 896 P.2d 240, 244 (Alaska 1995)).

to provide suitable housing for the children."[13]   We held in *Fredrickson* that this "substantial change in [the father's] living conditions" was a "change sufficient under AS 25.20.110(a) to require a hearing."[14]

We agree that the facts as alleged by Kendall show a similar substantial change in his ability to provide a suitable environment for the children.  Kendall alleged that he had a long-time and stable relationship with Jasmine — who Ashleigh agrees is a good caregiver — in a residence appropriate for the children.  Ashleigh admitted that Kendall now provides his own diapers and supplies for the children, has successfully completed a parenting class, attends field trips with the children, and drives the children to and from preschool twice a week.  The court found that Kendall's "willingness and desire to parent, as well as his capacity for it, appear[] to have improved considerably from when the original custody order was issued."  And because the court considered Kendall's substance abuse to be "central to the question of whether there has been a substantial change in circumstances," the conclusions of his most recent behavioral health assessment — which we must presume to be true for purposes of deciding whether he was entitled to a hearing[15] — also support a conclusion that Kendall's living situation, and accordingly his ability to care for his children, has substantially changed.[16]

---

[13]     407 P.3d 480, 483-84 (Alaska 2017).

[14]     *Id.* at 484.

[15]     *Id.* at 482.

[16]     *See Nichols v. Mandelin*, 790 P.2d 1367, 1371-72 (Alaska 1990) (holding that, "in the aggregate," evidence of mother's "overall maturation, her changed marital status, her full time employment since 1982, and her sustained control of a former drinking problem" "constitute a substantial change in circumstances").

We conclude that Kendall made a prima facie showing that there had been a substantial change in circumstances since the 2016 custody order and was therefore entitled to an evidentiary hearing to determine whether there had in fact been a substantial change and, if so, whether custody should be modified.  It was error to deny him that hearing.

## V.    CONCLUSION

We VACATE the superior court's order denying a custody modification hearing and REMAND for proceedings consistent with this opinion.  We do not retain jurisdiction.